[Civil No. 4528.   Filed November 16, 1942.]

[131 Pac. (2d) 363.]

STATE OF ARIZONA, ex rel. JOE CONWAY, Attorney General, Appellant, v. HARRIETTE WILLOUGHBY GLENN, as Guardian of the Estate of WILLIAM CLARK WILLOUGHBY, an Incompetent, Appellee.

Mr. Joe Conway, Attorney General, and Mr. W. E. Polley, Assistant Attorney General, for Appellant.

Mr. John M. Williams, for Appellee.

LOCKWOOD, C. J.—This is an action brought by the State of Arizona, plaintiff, against Harriette Willoughby Glenn, as guardian of the estate of William Clark Willoughby, an incompetent, defendant, to recover certain sums claimed to be due for the maintenance of said incompetent in the Arizona State Hospital. Judgment was rendered in favor of defendant, and this appeal was taken.

The facts necessary for a determination of the appeal are not in question and may be stated as follows: William Clark Willoughby was employed by the Southern Pacific Railroad Company on December 18, 1928, on which date he suffered an accident and an injury while in the course of his employment. On April 25, 1930, the judge of the superior court of Pima county entered his order in case No. 4728 adjudging Willoughby to be insane and committed him to the state hospital, where he remained from July 11, 1930, to April 18, 1941, and again from May 13, 1941, to July 10 of the same year. The order of commitment made at the time contained no reference to the payment of any maintenance while he was in the state hospital, with the exception of the following:

"Mrs. W. C. Willoughby, wife, Douglas, Ariz., probably has claim against S. P. Co. for injury which caused his present condition, and some funds may be available in the future from that source."

His wife was appointed guardian of his estate by the superior court of Cochise county and effected a cash settlement with the railroad company for his injuries. Mrs. Willoughby died on January 27, 1938, and Harriette Willoughby Glenn, the daughter of the incompetent, was appointed guardian of his estate by the superior court of Cochise county, and duly qualified

as such. In November, 1940, an informal request was made by the officers of the state hospital to the guardian for the payment of the maintenance expenses of the incompetent at the hospital. As a result of this request, seven monthly payments of $30, and one of $12, were made by the guardian, but payments were then stopped. On January 20, 1942, the attorney general filed a petition in the superior court of Pima county for an inquiry into the ability of the incompetent's estate to bear the charges and expenses of his maintenance while in the state hospital. Pursuant to the petition an order to show cause was issued and a hearing was had, the guardian being present at such hearing, when the following order was made:

"In the Matter of the Application for the Commitment of W. C. Willoughby An Alleged Insane Person | No. 4728 Decision

"This matter coming on regularly for hearing an order to show cause why the court should not fix the charges against the estate of W. C. Willoughby, an alleged insane person, for the period during which he was an inmate of the state hospital, which charges would be for his maintenance, and it being undisputed at the hearing by the respondent, Harriette Willoughby Glenn, that the sum of $30 a month was a reasonable sum to be charged for the period the said Willoughby was an inmate of the state hospital, and the records of this court disclosing that in the original commitment, filed on April 25, 1930, the Judge of this court made the following entry:

" 'Mrs. W. C. Willoughby, wife, Douglas, Ariz., probably has claim against S. P. Co. for injury which caused his present condition, and some funds may be available in the future from that source.'

"It appearing from the said above entry that the court did not fix any sum for such maintenance because there was no assurance that the estate would have any money to pay the same,

"NOW, THEREFORE, the court does fix the sum of $30.00 a month as a reasonable charge to be paid by the estate of W. C. Willoughby, an alleged insane person, for his maintenance at the state hospital during the following periods:

"July 11, 1930 to April 18, 1941
"May 13, 1941 to July 10, 1941.

"Done in open court this the 12th day of February, A. D. 1942.

"Evo De Concini
"Judge"

Shortly thereafter the officers of the state hospital prepared a creditor's claim against the estate of the incompetent for his maintenance for the period which he was in the hospital, showing credits thereon of the payments above referred to made by the guardian, and a balance of $3,712 still due. No action was taken by the guardian on this claim for the reason, as stated by her, that she did not think it was a valid one, whereupon this suit was brought under the provisions of sections 38–1005 and 38–1007, Arizona Code 1939. It was established that the estate of the incompetent was fully able to pay the claim, but judgment was rendered nevertheless for defendant.

The first question we consider is as to under what authority the claim for maintenance was made. At the time the order above set forth was made, chapter 44 of the Regular Session Laws of 1941, as amended by chapter 23, first special session of 1941, was in effect. Sections 6 and 17 thereof read so far as material as follows:

"Sec. 6. *Payment of maintenance.* In the event a person is received by the state hospital whose estate is chargeable with his maintenance, the court shall fix the amount to be charged, and the state hospital, through the business manager, shall collect all moneys due therefor. Moneys so collected, moneys collected for the care of voluntary patients, and, when and as collected, moneys due from the United States or any agency or in-

strumentality thereof for the confinement, care, or maintenance of Indian wards of the government or other persons committed pursuant to federal action are appropriated to the state hospital for the insane, for the operation and maintenance fund. When collected they shall be paid to the state treasurer, through the state auditor.''

''Sec. 17. *Cost of maintenance; guardian of property.* The superior court shall cause inquiry to be made into the ability of any insane person committed by it, to bear the charges and expenses of his examination, commitment and maintenance while in custody, and if the insane person is able by the possession of money or property, to pay such charges or any portion of them, such court shall fix the amount thereof, and appoint a guardian of the property of such person, as in other cases of guardianship. The guardian shall pay the cost of the examination, and the expenses of commitment and maintenance of said insane person, from the estate of said insane person. . . . ''

Section 6, *supra,* as originally adopted, is first found in chapter 44, *supra.* Section 17 was an amendment of section 8–303, Arizona Code 1939, which, in turn, traces back through section 1771, Revised Code 1928 and paragraph 1201, Revised Statutes Arizona 1913 (Civ. Code). This history of this statute is important, for it is contended by defendant that any order for the maintenance of a person committed to the state hospital must be made at the time of the commitment, and that the court lacks jurisdiction to make such an order thereafter.

Paragraph 1201, *supra,* reads so far as material as follows:

''The superior court, *at the examination of the alleged insane person, or at any time thereafter,* may cause inquiry to be made into the ability of any insane person committed by him to bear the charges and expenses of his examination, commitment and maintenance while in custody, and in any case where the insane person is able by the possession of money or property, to pay such charges or any portion of them, such

court shall appoint a guardian of such insane person. . . . The guardian appointed as hereinbefore mentioned shall pay the cost of the examination, and the expenses of commitment and maintenance of said insane person, from the money and proceeds of the sale of the property of said insane person, . . . ." (Italics ours.)

When the code was revised in 1928, it was amended to read as follows:

"*Cost of maintenance; guardian of property.* The superior court may cause inquiry to be made into the ability of any insane person committed by it, to bear the charges and expenses of his examination, commitment and maintenance while in custody, and if the insane person is able by the possession of money or property, to pay such charges or any portion of them, such court shall fix the amount thereof, and appoint a guardian of the property of such person, as in other cases of guardianship. The guardian shall pay the cost of the examination, and the expenses of commitment and maintenance of said insane person, from the estate of said insane person." Section 1771.

It will be noted that the language "at the examination of the alleged insane person, or at any time thereafter" found in paragraph 1201, *supra,* is omitted from section 1771, *supra,* and that neither it nor section 17, *supra,* makes any reference whatever to the time at which the order should be made. It is urged that this shows it was the later intent of the legislature that the order of maintenance be made only at the time of the original examination and commitment.

██ We think it is just as reasonable to say the omission of the phrase "at the time of the examination" means that it could not be made then but must be made at a future time, as to say that the omission of the phrase "at any time thereafter" means that it must be made at the time of the examination. We have held repeatedly that unless a change in the language of the 1928 code clearly shows that the legislature intended

to make a change in the meaning of a previous law, it will be presumed that the change was in form only and that the substance of the previous law was still in effect. *Sullivan* v. *Cashion,* 38 Ariz. 387, 300 Pac. 193; *Castaneda* v. *National Cash Register Co.,* 43 Ariz. 119, 29 Pac. (2d) 730.

We hold, therefore, that section 17 of chapter 44, *supra,* authorizes and directs the court to make inquiry into the ability of an insane person committed by it to pay the expenses of his maintenance at any time that it may deem proper. This is but common sense. It is, and always has been, the clearly indicated intent of the legislature that while no person will be debarred the care and protection of the state hospital because of a lack of ability to pay for such care, those whose estates are able to bear the expense should do so. It is often the case, as is evidenced in the present situation, that at the time of commitment the estate of the incompetent may be utterly unable to pay anything for his maintenance, while at a later date it may, from various causes, become amply able to bear the burden.

We hold, therefore, that the superior court of Pima county, which had jurisdiction of the person of the incompetent at the time of his commitment, had jurisdiction at any time thereafter to consider his ability to pay for his maintenance, and to make such order as was proper in the premises.

But, it is urged, the order in the present case is retroactive for nearly twelve years, and that such could not have been the intent of the legislature. We think this contention cannot be sustained. Since the whole theory of the law is that those who receive services from the state hospital shall pay for them if they are able, we see no reason to believe the legislature intended the fact that the ability did not occur until a later date should relieve them from the responsibility of paying for what they have previously received.

■ It is said that section 15, article 22, of the Constitution, which reads as follows:

*"(Public institutions.)*—Reformatory and penal institutions, and institutions for the benefit of the insane, blind, deaf, and mute, and such other institutions as the public good may require, shall be established and supported by the state in such manner as may be prescribed by law."

is a declaration that the services of such institutions as the state hospital shall be rendered free of charge. We cannot agree with this contention. The section provides that it shall be supported by the state "in such manner as may be prescribed by law," and the law has prescribed that so far as the inmates are able they shall bear their share of the burden.

■ It is also claimed that under the common law no charges were made for the care of the insane. Whether this be true or not, a statutory provision authorized by the Constitution always supersedes the common law.

■ Objection is also made that proper vouchers were not presented with the claim. In view of its nature we fail to see what vouchers are necessary. If, by this, it is meant that there is no evidence that the incompetent was ever actually given care and maintenance in the state hospital for the time for which the bill was rendered, the answer of defendant admits that her ward was in custody at the state hospital for the times set forth in the claim. We think this dispensed with the necessity of presenting any further proof on the matter. Sections 42–143 and 38–1004, Arizona Code 1939, read, respectively, so far as material as follows:

*"Procedure as in estates of decedents.*—The provisions relating to the estates of decedents, so far as they relate to the practice in the superior court, apply to guardianships."

*"Proof of claims—Allowance where not properly proven.*— . . . The executor or administrator may also

require satisfactory vouchers or proofs to be produced in support of the claim. . . . "

We think that unless the guardian makes a demand for additional vouchers or proof, it does not invalidate the claim as presented merely because such proof is not offered on presentation. In the present case there is no showing that any demand was made for either vouchers or further proof or that the claim was rejected by the guardian on account of their lack.

. It is further contended that the claim was not presented in time because it was not filed with the guardian until long after notice to creditors had been given, as provided by law, and she cites in support thereof section 38–1003, Arizona Code 1939, which reads in part as follows:

"*Presentation of claims—Barred if not presented.*— All claims arising upon contracts, whether due, not due or contingent, shall be presented to the executor or administrator within the time limited in the notice, and any claim not so presented is barred forever; . . . ."

In the first place, there was no legal claim against the estate which could have been presented until the court in 1942 fixed the amount which the guardian should pay, and in the second place, the claim did not arise on contract but by operation of law. *Lowry* v. *Crandall,* 52 Ariz. 501, 83 Pac. (2d) 1003, was based on a claim arising on implied contract, and not a liability fixed by statute.

It is further urged that the statute of limitations, Code 1939, § 38–1007, has run. The liability did not accrue until the order of the court made in February, 1942, and this action was brought in a few days thereafter.

Finally, it is said that it is unjust and inequitable to require the estate of the incompetent to pay a bill for services rendered ten years back. The legislature expressly provided that the payment should

be for the "examination, commitment and maintenance *while in custody*" (section 17, *supra*), without limiting such maintenance to a time after the estate of the incompetent was able to bear the burden. We have said in *State* v. *Hunt,* 59 Ariz. 256, 126 Pac. (2d) 303, 304:

"We think it implicit in the legislation concerning insane persons, as found in sections 8–301 to 8–303 and 47–217, Arizona Code 1939, that such persons should be cared for regardless of whether they have means to pay for their care or not. That is true also of Chapter 44, *supra.* The legislative intent, as gathered from these acts, is that an insane person, if he have property, should bear the expense incident to his commitment to the hospital and for his maintenance thereafter."

We see nothing essentially unjust or inequitable in the general principle that a man should pay for valuable services received, no matter how long a time has elapsed since they were rendered. The various statutes of limitations and the doctrine of laches bar the right of action under certain circumstances, but they have never been considered to destroy the moral obligation to pay.

We hold, therefore, that the superior court of Pima county had jurisdiction to make the investigation which it did on February 12, 1942, as to the ability of the estate of the incompetent to pay for his maintenance during all the time in which he was in custody at the state hospital and to make the order fixing the amount which should be paid; that the estate of the incompetent was amply able at the time the order was made to pay for such maintenance; that the claim as presented was proper in form, and on a failure of the guardian to approve it, the state was authorized to bring the present action, and that the trial court erred in rendering judgment for the defendant.

The judgment is reversed and the case remanded with instructions to enter judgment for the state.

McALISTER and ROSS, JJ., concur.