[Civ. No. 18714.   First Dist., Div. Two.   May 12, 1960.]

COUNTY OF SANTA CLARA, Respondent, v. PETE ROBBIANO, as Executor, etc., Appellant.

Malovos, Mager & Chasuk, Kenneth R. Malovos and Chalmers Smith for Appellant.

Peter J. Mancuso for Respondent.

STONE, J. pro tem.*—This appeal is taken on an agreed statement of facts, the pertinent portions of which follow:

"This action was brought on August 31, 1956, by the County of Santa Clara, as plaintiff, against Pete Robbiano, Executor of the Estate of Jean F. Deray, deceased, as defendant, seeking a judgment against the estate in behalf of the County in the sum of Twenty Five Thousand One Hundred and Forty One Dollars ($25,141.00) alleged to have been expended by the County for indigent and medical assistance and services rendered up to and including October 14, 1955.

"The decedent died on or about October 14, 1955, and at the time of his death he was an inmate of the County Hospital of Santa Clara County and receiving medical care and treatment. Thereafter, on or about November 1, 1955, the defendant qualified as executor of the estate of the deceased. Due and regular Notice to Creditors of the deceased was first published on November 4, 1955. On May 22, 1956, over six (6) months after first publication of Notice to Creditors, plaintiff filed a written claim against the estate for hospitalization in the sum of Twenty Five Thousand One Hundred and Forty One Dollars ($25,141.00). This claim was rejected by the executor of the estate on or about June 4, 1956.

"The assets of the estate of Jean F. Deray at the time of his death consisted primarily of a small parcel of residential real property which was his home and which had stood of record for several years prior to the receiving of aid from plaintiff. This property was liquidated during administration and the assets now consist entirely of cash in the amount of Seven Thousand Two Hundred Sixty Nine Dollars and Eighteen Cents ($7,269.18).

"There was never any written agreement whereby Jean F. Deray agreed to reimburse the County of Santa Clara for any aid rendered. There was never any concealment of assets by Jean F. Deray, and at no time did Jean F. Deray misrepresent his assets or financial condition to any agent of the County of

---

*Assigned by Chairman of Judicial Council.

Santa Clara. Neither did Jean F. Deray acquire property, real or personal, after receiving any aid from the County of Santa Clara.

"Trial of this action was held on November 18, 1958, in the Superior Court of the State of California in and for the County of Santa Clara before the Honorable Marshall S. Hall. The parties stipulated that the reasonable amount and value for services received by the decedent from the County of Santa Clara within the four year period next preceding the death of decedent was Seventeen Thousand Four Hundred Ninety Six Dollars ($17,496.00), and for the purposes of the action, no other amount was involved since the value of the estate was considerably less.

"The County contended that its action was based upon Section 203.5[1] of the California Welfare and Institutions Code and Sections 2600 to 2611 inclusive of the Welfare and Institutions Code insofar as these sections are incorporated into Section 203.5 of said Code. The county, therefore, contended the action was statutory, and it was immaterial whether or not the plaintiff filed a creditor's claim on time or at all. Defendant contended that the County's claim was contractual in nature, and that therefore the action was barred for failure to file a creditor's claim within the time provided by California Probate Code Sections 700 and 707.[2] The sole question sub-

---

[1] Welfare and Institutions Code, Section 203.5, insofar as pertinent here provides:

"The board of supervisors in each county may fix the rates to be charged patients admitted to any county hospital and may direct any county officer to collect the amounts due the county for hospitalization and medical care. In fixing and collecting hospital charges the board may exercise all the powers conferred by Article 4 of Chapter 2 of Division 4 of this code. The board, or such county officer as it may authorize or designate, may adjust or compromise hospital charges according to the financial condition of the patient, his estate, or legally responsible relatives."

[2] Pertinent portions of sections 700 and 707 provide:

That the executor or administrator promptly publish "a notice to the creditors of the decedent, requiring all persons having claims against the decedent to file them, with the necessary vouchers, in the office of the clerk of the court from which letters issued, or to present them, with the necessary vouchers, to the executor or administrator, at his residence or place of business, to be specified in the notice, within six months after the first publication of the notice."

"All claims arising upon contract, whether they are due, not due, or contingent, and all claims for funeral expenses and all claims for damages for physical injuries or death or injury to property or actions provided for in Section 574 of this code, must be filed or presented within the time limited in the notice . . ."

mitted to the court was whether or not Sections 700 and 707 of the California Probate Code were a bar to the action.''

■ At common law, a recipient of public assistance was under no liability to reimburse the state and county for aid legitimately obtained. (*County of Los Angeles* v. *Security First Nat. Bank,* 84 Cal.App.2d 575, 578 [191 P.2d 78].) Since Welfare and Institutions Code, sections 203.5 and 2600-2611, authorize reimbursement for hospitalization furnished by a county, it would appear on the face of it that the cause of action is statutory and not contractual in nature. Appellant, however, contends that the statute simply gives rise to an implied contract, and that even though the statute authorizes the action, the theory of recovery must be that of contract.

The controversy here presented, as in many other cases, stems from the confusion created by the indiscriminate use of the term ''implied contract.'' Specifically, it arises from the failure to distinguish between contracts implied in fact, and contracts implied by law. ■ Three types of obligation have been classified as contractual. They are: first, the classic or express contract, the obligations of which are governed by the express intent of the parties, either written or oral. Second, the implied in fact contract, in which the intent of the parties is not expressed but is inferred from the facts and circumstances surrounding the transaction. The gist of the obligation even though implied is none the less dependent upon intent. The third type is the ''quasi contractual'' obligation, which is more accurately said to be imposed by law than implied by law. It is unfortunate that the term ''implied contract'' (implied in fact) has frequently been used interchangeably with the term ''quasi contract'' (imposed by law). ■ It is clear that in the term ''quasi contract'' the word *contract is not* definitive since the obligation depends not at all upon the intent of the parties but rather upon the unjust enrichment of one who has no intent, either express or implied, to pay or to make reimbursement for the consideration received by him. ■ It is not an implied contract in the sense that the court finds an implied intent to pay. It is founded upon a relationship from which an obligation is imposed by law regardless of intent because good conscience dictates that the person benefited should make reimbursement. The distinction between implied and quasi contract is recognized in 1 Williston on Contracts, third edition, where it is said at page 12:

"It is important to distinguish between quasi contracts and contracts implied in fact, not only because it is desirable for clear theoretical analysis, but also because of the difference in the legal relations which may be involved under a true contract and those imposed by law under the name of a quasi contract. Quasi contractual obligations are imposed by the law for the purpose of bringing about justice without reference to the intention of the parties. . . . On the other hand, a true contract cannot exist, however desirable it might be to have one, unless there is a manifestation of assent to the making of a promise. . . ." (See also *Desny* v. *Wilder*, 46 Cal.2d 715, 734 [299 P.2d 257]; *Ward* v. *Taggart*, 51 Cal.2d 736, 743 [336 P.2d 534].)

There are California cases which hold that actions for reimbursement authorized by Welfare and Institutions Code sections similar to the one before us are statutory and not subject to the limitations of Probate Code, sections 700 and 707. It was held in *Department of Social Welfare* v. *Stauffer*, 56 Cal.App.2d 699, 702 [133 P.2d 692]: "The first question deserving consideration may be stated as follows: Is the right of recovery given by section 2223 of the Welfare and Institutions Code within the purview of the rule requiring certain claims against a decedent's estate to be filed within six months from the date of the first publication of notice to creditors or be forever barred. (Prob. Code, §§ 700, 707.) Probate Code section 707 applies in terms only to contractual claims, statutory liabilities not being included therein. (*People* v. *Hochwender*, 20 Cal.2d 181 [124 P.2d 823]; 11A Cal.Jur., p. 718.) Section 2223 is of statutory origin and the right of recovery therein given cannot reasonably be said to be based upon any express or implied contract."

Although the court in Stauffer made no attempt to distinguish between contractual and quasi contractual obligations, nevertheless its determination that a cause of action for reimbursement founded upon the Welfare and Institutions Code is statutory and not contractual is persuasive. The code section construed by Stauffer is comparable to the one we are considering and since the Supreme Court denied a hearing, the case is authority for our holding that the cause of action in this case is statutory and not contractual. The case of *County of Los Angeles* v. *Security First Nat. Bank, supra,* cites Stauffer with approval and in addition holds that section 707 of the Probate Code is not applicable to a proceeding for reimburse-

ment brought under section 2603 of the Welfare and Institutions Code.

The judgment is affirmed.

Kaufman, P. J., and Draper, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 6, 1960.