495 P.2d 485

**STATE OF MICHIGAN, Appellant,**

**v.**

**FIRST NATIONAL BANK OF ARIZONA,**
**Executor of the Estate of Laura Ann**
**Palmer, Deceased, Appellee.**

**No. 1 CA–CIV 1734.**

Court of Appeals of Arizona,
Division 1,
Department B.
April 6, 1972.

Jennings, Strouss & Salmon by Leo R. Beus, Thomas C. Kleinschmidt, Phoenix, for appellant.

Stevens & Leibow by Howard P. Leibow, Phoenix, for appellee.

JACOBSON, Judge.

This appeal calls into question the validity of a claim by the State of Michigan against the estate of a deceased parent for care and treatment extended by the State of Michigan for the deceased's epileptic child.

On October 9, 1970, the appellant, State of Michigan (Michigan), filed a petition for allowance of rejected claim in the Superior Court of Maricopa County, Arizona, against appellee First National Bank of Arizona, executor of the estate of Laura Ann Palmer, deceased (executor), seeking to enforce a claim in the sum of $33,681.78. Following the filing of an answer, both parties moved for summary judgment, the trial court granting the motion of the executor, from which Michigan appeals.

The factual basis for Michigan's claim is as follows:

On April 4, 1934, Jean Elizabeth Palmer, daughter of the deceased Laura Ann Palmer, was admitted to the Caro State Home and Training School, Caro, Michigan, as an epileptic patient. The daughter at that time was 17 years old and she is still a patient at that institution. Between 1934 and 1945 the parents of Jean Elizabeth paid to Michigan the sum of $4,417.50 for her support. No further payments have been made. Contact by the parents with the child consisted of a visit in 1938, correspondence in August, 1969, and two other letters between these dates.

On March 24, 1970, the executor first published notice to creditors of the Estate of Laura Ann Palmer, and on July 15, 1970, Michigan filed an original claim in the sum of $49,468.13 with the Clerk of the Superior Court of Maricopa County. This claim was based on a Michigan statute (Public Act of 1965, No. 335, Michigan Compiled Laws, 1948) § 330.651 et seq., Mich.Stats.Ann.1969 § 14.870 [101] et seq.), seeking to collect as a charge against the estate amounts expended by Michigan from April 4, 1934, to the date of filing, for the support and maintenance of the decedent's daughter. An unconformed, unsigned copy of this claim was also forwarded to the executor, which was received on July 21, 1970. The executor rejected this purported claim on the ground it had not received a signed original, whereupon Michigan sent another original to the executor, which was received on July 27, 1970. This second claim was denied on the grounds it was received three days after expiration of the four-month period for filing creditors' claims.

On August 13, 1970, Michigan filed an amended claim in the sum of $33,681.78 which was also rejected by the executor. The suit by Michigan seeking the enforcement of its claim followed.

The issues raised on this appeal are as follows:

(1) Did Michigan substantially comply with A.R.S. § 14-561 so that its claim filed with the Clerk of the Superior Court on July 21, 1970 was timely?

(2) Is Michigan's claim barred by the Statute of Limitations?

(3) Is Michigan entitled to claim support from a parent of a hospitalized child under existing Michigan statutes, and if so, are those statutes constitutional?

48

The executor, in defense of the trial court's granting summary judgment in its favor, contends that Michigan failed to comply with that provision of A.R.S. § 14–561 which provides that creditors having claims against the estate shall "exhibit them with necessary vouchers *to the executor . . . . at his residence or business address specified in the notice* within four months from date of first publication of the notice." Michigan contends that its filing an original signed claim with the Clerk of the Court and a copy thereof with the executor amounts to substantial compliance with this statute so as to prohibit its claim from being barred.

The court is first faced with a determination of whether Michigan's claim is of the type that would be barred for failure to file with the executor within the four-month period. A.R.S. § 14–570 provides in part that "[a]*ll claims arising upon contracts* . . . shall be presented to the executor or administrator within the time limited in the notice to creditors, and any claim not so presented is barred forever. . . ." (Emphasis added). This statute has been interpreted to mean that claims against the estate which do not arise "upon contract" are not barred for failure to file with the executor within the time limitation. Brainard v. Walters, 85 Ariz. 60, 331 P.2d 595 (1958); Reese v. Cradit, 12 Ariz.App. 233, 469 P.2d 467 (1970).

While Michigan's claim in this case is purportedly based upon a Michigan statute and, therefore, at first blush would appear to be a statutory claim rather than a contract claim, the matter is not without controversy. Some courts have held that even though a claim originates by statute, if the obligation created thereby is "quasi ex contractu" in nature, the nonclaim statute may still apply. *See,* Hays v. Bank of America Nat. Trust & Savings Ass'n, 71 Cal.App.2d 301, 162 P.2d 679 (1945). Thus, the case of Reith v. County of Mountrail, 104 N.W.2d 667 (N.D.1960) held that where the father made application for admission of his son to an institution for the epileptic,

the father impliedly agreed to pay for such care and maintenance, and the fact that a statute provided for the extent of the father's liability did not destroy the contractual nature of the father's obligation. The court therefore held that the state was required to file a claim in the father's estate for such support and maintenance and its failure to do so barred the claim forever. Also *see* State ex rel. State Board of Charities & Reform v. Bower, 362 P.2d 814 (Wyo.1961).

We are more impressed, however, by the decisions of our neighboring state of California, which hold the exact type of liability sought to be imposed herein, to be solely a statutory liability and therefore not subject to the California nonclaim probate statute. Department of Mental Hygiene of State v. Rosse, 187 Cal.App.2d 283, 9 Cal. Rptr. 589 (1960); Department of Mental Hygiene v. Brock, 198 Cal.App.2d 82, 18 Cal. Rptr. 31 (1961); also *see* County of Santa Clara v. Robbiano, 180 Cal.App.2d 845, 5 Cal.Rptr. 19 (1960). A like result has been reached by Arizona in holding that the liability of the estate of a deceased incompetent for the deceased's maintenance at the state hospital during his life "did not arise on contract but by operation of law", and hence the predecessor of A.R.S. § 14–570 was not applicable. State of Arizona ex rel. Conway v. Glenn, 60 Ariz. 22, 131 P.2d 363 (1942).

We therefore hold that the claim of Michigan seeking reimbursement from a parent of a mentally ill person of expenses incurred by that state for maintenance of such person is statutory and not contractual and A.R.S. § 14–570 is not applicable. Therefore a claim need not be filed within the 4-month period to maintain this action. Having determined that this claim need not have been filed with the executor, we need not determine whether the filing utilized in this case was sufficient.

This then brings us to the second question presented—is Michigan's claim barred by the Statute of Limitations?

Michigan seeks, in this action, reimbursement for maintenance during the period from April 4, 1935 through January 1, 1966. Its action was filed in Arizona on October 9, 1970.

Michigan first contends that no statute of limitation is applicable to it because of the Michigan statute which provides that any action brought by the State of Michigan for recovery of the cost of maintenance of persons in state institutions is not subject to the statute of limitations. (Mich.Stat.Ann. § 27A.5821 M.C.L.A. § 600.5821 (1962 Rev.)).

■ If this statute is considered merely as a codification of the common law principle that the statute of limitations does not run against the sovereign, then we are confronted with whether that sovereignty has extraterritorial effect. Although the authority on this subject is sparse, it appears that logic would require that once a state, as such, goes beyond its territorial limits, and seeks redress in the courts of a sister state, its mantle of sovereignty drops at its borders, and it enters the courts of another state clothed only in the common garb of an ordinary person. Hamilton County Treasurer v. Hartzell, 55 Pa.Dist. & Co.R. 100 (1945). This principle has been applied in an action by Pennsylvania in the courts of New Jersey for recovery of the cost of maintenance of a mentally incompetent, holding, "When a foreign state sues in the courts of our State it lays aside its sovereignty and is to be dealt with as a private suitor." Pennhurst State School v. Estate of Goodhartz, 42 N.J. 266, 200 A. 2d 112 (1964). Also see, Western Lunatic Asylum v. Miller, 29 W.Va. 326, 1 S.E. 740 (1887). We therefore hold that if the Michigan statute referred to is merely a codification of its common law sovereign immunity from the statute of limitations, it has no applicability when that state sues in this jurisdiction.

■ Michigan contends, however, that the above statute is part of the substantive law of the statute upon which its claim is based, and therefore under the Full Faith and Credit clause of the United States Constitution, must be given effect by the courts of the State of Arizona.

We also note initially that this Michigan statute is contained in its general statute of limitations section and not as a part of the specific Michigan statute giving rise to the claim it seeks to enforce in this action. In this regard, see, Deupree v. Levinson, 6 Cir., 186 F.2d 297, cert. denied, 341 U.S. 915, 71 S.Ct. 736, 95 L.Ed. 1351 (1951).

■ Ordinarily, a statute of limitations is considered procedural in nature only and therefore not entitled to full faith and credit. Slade v. Slade, 81 N.M. 462, 468 P.2d 627 (1970). An exception to this rule is where the statutory right to bring the action expires in the jurisdiction of origin, then it is considered a substantive part of the statute and no action may be maintained in the forum, although the statute of the forum would allow the filing of the action. Restatement (second) of Conflict of Laws, § 143 (1969). It is important to note that substantive status is only achieved when the time limitation is shorter in the state of origin than in the forum, and has no applicability where the limitation extends the time. Since the Michigan statute is of the latter type, we hold that it does not comprise the substantive law of Michigan and therefore is not entitled to full faith and credit in Arizona.

■ Having determined that Michigan is not protected by its own nonbar statute, we hold that Michigan's cause of action is controlled by the applicable Arizona statute of limitations. We reach this result based upon the conflict of laws rule that a suit brought by a nonresident against a resident in the forum of the resident is controlled by the statute of limitations of the forum. Work v. United Globe Mines, 12 Ariz. 339, 100 P. 813 (1909); Western Coal & Mining Company v. Hilvert, 63 Ariz. 171, 160 P.2d 331 (1945); Restate-

ment (second) of Conflict of Laws § 142 (1) (1969).

Michigan contends, however, that even if the Arizona statutes are applicable, its action was timely. This contention is based upon three theories: (1) that the services rendered to the mentally incompetent child are still continuing and the statute does not begin to run until the termination of the rendering of such services, citing Continental Casualty Co. v. Grabe Brick Co., 1 Ariz.App. 214, 401 P.2d 168 (1965); (2) that the cause of action is based upon fraud or mistake and that the statute of limitations is tolled until the discovery of the fraud or mistake, citing A.R.S. § 12–543(3); and (3) that Michigan's cause of action under its statute did not accrue until Michigan discovered assets out of which reimbursement could be had.

■ The answer to Michigan's first contention is found in the claim it seeks to enforce—reimbursement for funds expended through January 1, 1966. In 1965, Michigan enacted legislation which, in essence, changed the liability of a parent for support of a child in a state institution from a continuing one during the life of the child (Mich.Stats.Ann. § 14.818, M.C.L.A. § 330.-28 (1969 Rev.)) to only a liability for support during the minority of the child. (Mich.Stats.Ann. § 14.870(102), M.C.L.A. § 330.652 (1969 Rev.)). It is apparent that, assuming liability of a parent exists at all under the prior Michigan enactment for support after age 21, that liability terminated as of the effective date of the new legislation—January 1, 1966. Michigan has recognized this termination of support obligation in the present case by seeking reimbursement for the maintenance of the epileptic child only through January 1, 1966. Thus, though Michigan continues to provide services (support) for the epileptic child, the liability of the parent to reimburse Michigan for that support terminated on January 1, 1966. Michigan's claim for services having terminated under its own statutes on January 1, 1966, its cause of action was therefore not a continuing one

but also became fixed as of that date and the statutes of limitation commenced to run. See, Builders Supply Corp. v. Marshall, 88 Ariz. 89, 352 P.2d 982 (1960).

■ Michigan's second contention is that this action is one in fraud or mistake and therefore A.R.S. § 12–543(3) is applicable. We first note that A.R.S. § 12–543(3) on its face is not applicable to Michigan's cause of action as this statute only applies "for relief on the ground of fraud or mistake". Michigan seeks no relief on the grounds of fraud or mistake, but rather its claim is based upon Michigan statutes. However, Michigan also argues that the case law interpreting this statute is applicable based upon a contention that the deceased in this case had an obligation to inform Michigan of her whereabouts, and her failure to do so amounted to fraud or mistake.

Assuming that the deceased did have such an obligation (although we know of no common law obligation that requires a debtor to keep his creditor informed of his whereabouts), the type of concealment referred to in the case law is not the whereabouts of the creditor, but the existence of a cause of action itself. See, Tom Reed Gold Mines Co. v. United Eastern Mining Co., 39 Ariz. 533, 8 P.2d 449 (1932); Morrison v. Acton, 68 Ariz. 27, 198 P.2d 590 (1948).

There is no contention here that the deceased's action in any manner concealed the existence of a cause of action against her, and we must assume that Michigan was aware of its own statute giving rise to that cause of action. We therefore hold that under the facts of this case A.R.S. § 15–543(3) has no application.

Michigan's last contention that its cause of action against the estate of the deceased did not accrue until discovery of assets is based upon the following Michigan statute:

"The attorney general, or at his request a prosecuting attorney, may commence, in the name and on behalf of the people of the state, *an action against a person*

*discovered to have real or personal property of a person,* or against the estate or the executing administrators or successors in interest of a person, who is liable for the care and maintenance of a mentally retarded person under the provisions of this act." (Emphasis added.) (Mich. Stats.Ann. § 14.870(112), M.C.L.A. § 330.662 (1969 Rev.))

 Our reading of the Michigan statutes dealing with the responsibility of third persons for upkeep of mental patients by the state leads us to the conclusion that the above-quoted statute does not set the date of determination of liability of such third persons, but is merely the vehicle by which the attorney general is authorized to bring suit for collection of that liability. The determination of liability in the first instance under the Michigan statute is the department of revenue (Mich. Stats.Ann. § 14.870(110), M.C.L.A. § 330.-660 (1969 Rev.)) or the probate court, (Mich.Stats.Ann. § 14.870(101a), M.C.L.A. § 330.651a (1971 Ann.Supp.) not the attorney general. We hold that this statute has no effect in extending the running of the statute of limitations in Arizona.

For the foregoing reasons we hold that Michigan's cause of action for support from the deceased accrued as of January 1, 1966, and that either A.R.S. § 12–541(3) (one-year limitation), dealing with liability created by statute or the general limitation statute, A.R.S. § 12–550 (four-year limitation), would bar recovery by Michigan in this action in Arizona.

Because of our determination that the trial court's granting of summary judgment in favor of the executor can be upheld on the statute of limitations issue, we need not determine whether under existing Michigan statutes its present claim is supportable or the constitutionality of those statutes. As regards the latter question, *see,* Department of Mental Hygiene v. Kirchner, 60 Cal.2d 716, 36 Cal.Rptr. 488, 388 P.2d 720 (1964), aff'd 62 Cal.2d 586, 43 Cal.Rptr. 329, 400 P.2d 321, and Miller v. State Department of

Revenue, 18 Mich.App. 145, 171 N.W.2d 3 (1969), aff'd. 385 Mich. 296, 188 N.W.2d 795.

Judgment affirmed.

HAIRE, C. J., and EUBANK, J., concur.