694 P.2d 324

**Frederick F. BAILEY, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF PIMA, and Harry Gin, a Judge Thereof, Respondents,**

**and**

**Hazel B. HOLMES, Real Party in Interest.**

**No. 2 CA–SA 162.**

Court of Appeals of Arizona, Division 2.

Jan. 4, 1985.

Karp & Levy, P.C. by Michael D. Bartz, Tucson, for petitioner.

Martin H. Schulman, Tucson, for respondent Holmes.

## OPINION

HATHAWAY, Judge.

This special action was taken from the order of the trial court denying petitioner's motion to dismiss based on the expiration of the applicable statute of limitations. Because we conclude that the trial court abused its discretion in denying the motion, and because petitioner has no equally plain, speedy and adequate remedy by way of appeal, we accept jurisdiction and grant relief in part. The following facts are pertinent to our disposition.

On or about June 20, 1975, petitioner and his then wife Alma Bailey executed a promissory note in the principal amount of $4,000 in favor of the real party in interest, Hazel Holmes. At that time, all parties

were residents of the State of Washington, and the note was executed and payable there 90 days later. With the exception of a $100 payment in 1977, neither the principal nor interest has been paid on the note. Holmes filed suit on the note in Washington in January 1981 and a judgment was taken against Alma Bailey several months later. It appears, however, that petitioner had left the state sometime in 1980, and Holmes was unsuccessful in her efforts to serve petitioner either there or in Arizona, where he was believed to be residing. It further appears that Holmes was unable to collect on the judgment against Alma Bailey.

The present lawsuit was filed in Arizona on July 25, 1984, and the summons and complaint were served on petitioner's present wife on August 1. The complaint alleges, inter alia, that "in or about 1980, Defendant left the State of Washington and became a resident of Pima County, Arizona." Petitioner then filed his motion to dismiss, which Holmes opposed. Holmes further moved for leave to amend her complaint to delete the above-quoted allegation, stating that she did not actually know when petitioner became a resident of Arizona. The trial court granted the motion to amend at the same time as it denied the petitioner's motion to dismiss. This special action was taken only from the order denying the motion to dismiss.

[1] Before both the trial court and this court, petitioner has argued that (1) as the forum state, Arizona law governs the issue of limitations, (2) Holmes' cause of action accrued on the due date of the promissory note, and (3) the applicable four-year statute of limitations, A.R.S. § 12–544(3), had long expired. In opposition, Holmes relied on A.R.S. § 12–501, which provides:

"When a person against whom there is a cause of action is without the state at the time the cause of action accrues or at any time during which the action might have been maintained, such action may be brought against the person after his return to the state. The time of such person's absence shall not be counted or taken as a part of the time limited by the provisions of this chapter."

Holmes argues that correspondence admitted into evidence pertaining to her unsuccessful efforts to serve petitioner in Arizona with summons in the Washington action shows that he was not a resident of Arizona as of September 1981. Alternatively, she argues that for purposes of this special action it should be presumed that petitioner became a resident of Arizona immediately prior to the filing of her complaint in this action. In either event, she argues, the statute of limitations was tolled until September 1981 at a minimum due to petitioner's "absence" from the State of Arizona. In other words, it is Holmes' contention that the statute did not begin to run in Arizona until petitioner became a resident here.[1]

While Holmes' conclusions would appear to follow from certain language of the Arizona Supreme Court in *Western Coal & Mining Company v. Hilvert*, 63 Ariz. 171, 160 P.2d 331 (1945), we believe that language to be dicta under the circumstances of the case, and we further believe that the disposition of the issue in this case is not governed by § 12–501. In *Hilvert*, the issue before the court was whether the predecessor to § 12–501 applied to causes of action arising outside the state. The defendant was an Arizona resident, and the plaintiff had claimed that the applicable statute of limitations had been tolled during the various periods in which the defendant had been absent from the state. In addressing the applicability of the tolling statute, the court stated:

---

1. Holmes also argues that the evidence shows that the petitioner has been attempting to avoid service of process for a number of years, and that this fact warrants application of the doctrine of equitable estoppel to prevent petitioner from raising the statute of limitations. While this doctrine may have application in appropriate circumstances, it is intended to apply only where the defendant has concealed the existence of a cause of action, not where he has concealed his whereabouts. See *State of Michigan v. First National Bank of Arizona*, 17 Ariz. App. 45, 495 P.2d 485 (1972).

"Our statutes on limitation prescribe that there shall be commenced and prosecuted, within certain periods after the cause of action shall have accrued, and not afterwards, certain designated actions. This statute of limitation carries with it a proviso, which is contained in [§ 12–501]. To earn the repose of the statute, the person claiming it must remain within the state for the full period of time prescribed by law. [citation omitted] The place where the cause of action may be said to have arisen or accrued is not the question of paramount consideration in the application of [§§ 12–501 and 21–506]. Under [§ 12–501] the cause of action might accrue or arise in Arizona at a time when the person against whom it exists is a non-resident. The section is applicable to residents and non-residents alike." 63 Ariz. at 179, 160 P.2d at 335.

A literal application of this language would support Holmes' contention that § 12–501 had the effect of tolling the statute of limitations until petitioner became a resident of Arizona. However, since the defendant in *Hilvert* was a resident of Arizona at the time the cause of action accrued and thereafter this language is dicta. Further, the court was not required to consider the applicability of § 12–507, which was also in effect at that time and which we believe to be dispositive of this case. This statute provides:

"No demand against a person who removes to this state, incurred prior to his removal, shall be barred by the statute of limitation until he has resided in this state one year, unless barred at the time of his removal to this state by the laws of the state or country from which he migrated."

This statute must be read in conjunction with § 12–506, which prohibits any action against a person removing to Arizona from another state which is barred by the latter's statute of limitations.

Our statutes of limitation were adopted from those of the State of Texas, and we therefore look for guidance to the construction placed upon them by the courts of that state, in the absence of any controlling Arizona law. See *Hilvert*, supra. The history and purpose of the Texas counterpart to § 12–507 were discussed in *The Continental Supply Co. v. Hutchings*, 267 S.W.2d 914 (Tex.Civ.App.1954), where the court stated:

"It has long been held that under the terms of the statute in question a defendant may invoke the Texas statutes of limitations if he has resided here for twelve months, though the action against him may not be barred under the laws of the State from which he emigrated.... A brief review of its history may help us arrive at a proper interpretation of the statute. In 1841 the Fourth Congress of the Republic of Texas passed a number of limitations statutes which were continued in effect after Texas became a state. It was a known policy of Texas, both as an independent republic and afterwards as a state, to encourage immigration. In keeping with the policy our Supreme Court in 1849 held (Chief Justice Wheeler dissenting) that when a debt is contracted in another jurisdiction by a person who afterwards removes to this state, our statute of limitations is not suspended until his arrival, but runs against the action from the time of the accrual thereof. *Snoddy v. Cage*, 5 Tex. 106. In 1852 the legislature of the state passed a law which qualified and limited the rule as laid down by the Supreme Court in *Snoddy v. Cage*, supra. The 1852 enactment provided that an immigrant may not invoke the Texas statutes of limitations as a defense against obligations incurred in other jurisdictions until he has resided in this state for a 'space of twelve months.'" 267 S.W.2d at 915.

See also *Copus v. Department of Mental Hygiene, State of California*, 301 S.W.2d 217 (Tex.Civ.App.1957), rev. on other grounds, 158 Tex. 96, 309 S.W.2d 227 (1958) (stating that the purpose of this statute was to prevent emigrants from invoking the Texas statute of limitations against obligations incurred in other jurisdictions until they became bona fide inhabitants). Additionally, it should be noted that the Texas

courts have held that their counterpart to § 12–501 has no application to non-residents. See *Mourning v. Crown Stevedoring Company*, 417 S.W.2d 725 (Tex.Civ. App.1967).

 Unlike the situation in *Hilvert*, supra, we are squarely faced with a case in which the defendant has "incurred" a "demand" prior to his removal to this state which was not barred by the laws of the state of his prior residence at the time of his removal, and is therefore subject to the provisions of § 12–507. We agree with the courts of Texas that the intent of this statute, read in conjunction with § 12–506, is to permit the statute of limitations of the state in which the cause of action accrued and of which the defendant was a resident to bar an action in this state, if it had expired at the time of the defendant's removal, but to grant the plaintiff an additional year in which to institute the action in this state if the statute had not run at the time of the defendant's removal. To apply the language of *Hilvert* quoted above and § 12–501 to this action, as urged by Holmes, would render § 12–507 meaningless and nugatory.

Having determined that § 12–507 is the applicable tolling statute, the only remaining question is when did the petitioner "remove" to this state, a question we are unable to answer from the record before us. Contrary to Holmes' suggestion, we will not presume that petitioner became a resident immediately prior to the filing of her complaint. Indeed, when it appears on the face of the complaint that an action may be barred by limitations, the burden is on the plaintiff to establish that the statute has been tolled. *Engle Brothers, Inc. v. Superior Court In And For County Of Pima*, 23 Ariz.App. 406, 533 P.2d 714 (1975). Since it appears, however, that the trial court's determination was based on a misapplication of the law, the action must be remanded to the trial court for an evidentiary hearing. If the trial court determines from the evidence presented by the parties that the petitioner has resided in the State of Arizona for a period of one

year prior to the filing of Holmes' complaint, the trial court is directed to enter its order granting petitioner's motion to dismiss.

The order of the trial court denying petitioner's motion to dismiss is vacated, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

BIRDSALL, C.J., and HOWARD, J., concur.