NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

VAUGHN-LEAVITT LIMITED PARTNERSHIP,
*Plaintiff/Appellant/Cross-Appellee*,

*v.*

U.S. BANK NATIONAL ASSOCIATION,
*Defendant/Appellee/Cross-Appellant*.

No. 1 CA-CV 22-0040
FILED 3-7-2023

Appeal from the Superior Court in Maricopa County
No. CV2020-016171
The Honorable Bradley H. Astrowsky, Judge

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED**

COUNSEL

Lane & Nach, P.C., Phoenix
By S. Gregory Jones
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Fidelity National Law Group, Phoenix
By David M. LaSpaluto
*Counsel for Defendant/Appellee/Cross-Appellant*

## MEMORANDUM DECISION

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

**K I L E Y**, Judge:

¶1 Vaughn-Leavitt Limited Partnership ("Vaughn-Leavitt") appeals the superior court's dismissal of its first amended complaint (the "FAC") seeking: (1) foreclosure of a deed of trust (the "2003 DOT") against certain real property (the "Property") and (2) a declaration that the 2003 DOT was superior in priority to another deed of trust against the Property in favor of U.S. Bank National Association ("U.S. Bank").[1] U.S. Bank cross-appeals the superior court's denial of its request for an award of attorney fees. For the following reasons, we affirm the court's dismissal of Vaughn-Leavitt's FAC but reverse and remand the court's decision declining to award U.S. Bank attorney fees.

## FACTS AND PROCEDURAL HISTORY

¶2 We review *de novo* a dismissal for failure to state a claim, accepting as true the facts alleged in the operative complaint. *Shepherd v. Costco Wholesale Corp.*, 250 Ariz. 511, 512, ¶ 3 n.1 (2021). As relevant to this appeal, Vaughn-Leavitt's FAC alleges the following:

¶3 Anthony Anderson and his spouse are co-trustees of the AMA Trust. In late 2002, the AMA Trust entered into a revolving line of credit agreement with Vaughn-Leavitt as lender. On February 7, 2003, Anderson and his spouse conveyed the Property to the AMA Trust. That same day, the AMA Trust executed a deed of trust in favor of Vaughn-Leavitt as security for the debt incurred pursuant to the revolving line of credit. Shortly thereafter, the February 7, 2003 deed of trust was released and the 2003 DOT was recorded against the Property to secure the AMA Trust's debt to Vaughn-Leavitt.

---

[1] A related entity, 8723 E. Via de Commercio, LLC ("Commercio"), was also a plaintiff in this case, asserting claims arising out of its purported leasehold interest in the Property. Commercio's claims were subsequently dismissed, and Commercio has not appealed.

¶4          In 2005, Anderson sought a loan, to be secured by the Property, from Downey Savings and Loan Association ("Downey"). Anderson "made clear to [Downey's] loan officer that he was only interested in a second mortgage" that would not impact the 2003 DOT's first-position lien status. When the loan officer told Anderson that the 2003 DOT "would need to subordinate so the Downey Loan could take first position," Anderson refused. Downey then indicated it might reconsider its position.

¶5          In mid-May 2005, a title company contacted Anderson to schedule the closing for the Downey Loan. Under the impression that Downey had agreed that "the Downey Loan would be a second mortgage," Anderson and his spouse went to the title company at the scheduled time and met with the title officer. When the title officer presented them with a release (the "Release") for the 2003 DOT, Anderson replied that he was not authorized to sign the release on behalf of Vaughn-Leavitt and, in any event, was unwilling to release the 2003 DOT. The title officer assured Anderson that the signing and recording of the Release "would be of no consequence" because the Release was "defective" since Vaughn-Leavitt had not authorized him to sign it. Anderson then signed the Release on the understanding that it was invalid and would not affect Vaughn-Leavitt's first-position lien priority.

¶6          After the Downey Loan closed, the Release and a deed of trust against the Property securing the Downey Loan (the "2005 DOT") were recorded.

¶7          In 2019, U.S. Bank, as Downey's successor-in-interest, initiated a trustee's sale on the 2005 DOT. U.S. Bank completed the sale in 2020, obtaining a trustee's deed to the Property.

¶8          Following U.S. Bank's foreclosure on the 2005 DOT, Vaughn-Leavitt filed this action to foreclose on the 2003 DOT, asserting that the AMA Trust defaulted on its loan from Vaughn-Leavitt. Vaughn-Leavitt contested U.S. Bank's ownership of the Property, asserting that, notwithstanding the recording of the Release in 2005, the 2003 DOT remained in effect and was entitled to priority over the 2005 DOT.

¶9          U.S. Bank moved to dismiss the FAC pursuant to Arizona Rule of Civil Procedure ("Rule") 12(b)(6), arguing, *inter alia*, that Vaughn-Leavitt's claims were time-barred. Noting that Vaughn-Leavitt had notice that the 2003 DOT had been released when Anderson "executed the Release and allowed it to be recorded," U.S. Bank asserted that Vaughn-Leavitt's

cause of action "accrued" when the Release was recorded in May 2005. U.S. Bank further maintained that Vaughn-Leavitt's claims were governed by the four-year limitations period prescribed in A.R.S. § 12-550. By waiting "until late 2020" to "assert the invalidity of the Release" recorded in 2005, the bank asserted, Vaughn-Leavitt "sat on its rights on its hidden priority claim" for "too long."

¶10          In response, Vaughn-Leavitt took the position that its cause of action did not accrue when the Release was recorded because Downey, U.S. Bank's predecessor-in-interest, was aware of Vaughn-Leavitt's position that the 2003 DOT remained effective because the Release was signed by Anderson without authorization. According to Vaughn-Leavitt, its cause of action did not accrue until 2020, when U.S. Bank foreclosed on the Property in disregard of Vaughn-Leavitt's position as senior lienholder.

¶11          U.S. Bank also raised other arguments in support of its motion to dismiss, including its contention that principles of judicial and collateral estoppel barred Vaughn-Leavitt from asserting the continued validity of the 2003 DOT due to statements and admissions made by Anderson in unrelated litigation. U.S. Bank supported these arguments with exhibits consisting of filings in unrelated court proceedings and other matters outside the pleadings. In response, Vaughn-Leavitt asserted, *inter alia*, that the superior court could not properly consider filings in other proceedings and other matters outside the pleadings in resolving U.S. Bank's motion to dismiss for failure to state a claim.

¶12          The superior court granted U.S. Bank's motion to dismiss, holding that

> Mr. Anderson, as owner of [Vaughn-Leavitt], executed the documents that led to the deed of trust that is in dispute in 2005. There is no dispute that Mr. Anderson, and [Vaughn-Leavitt], [were] aware of the deed of trust at the time. Accordingly, [any] dispute concerning [the] same should have been filed within the applicable statute of limitations, and not more than fifteen years later.

The court accepted U.S. Bank's alternative arguments as well, holding that Vaughn-Leavitt was estopped from asserting that the 2003 DOT remained in effect due to positions taken by Anderson in unrelated litigation.

4

**¶13**     U.S. Bank applied for an award of attorney fees and costs. The superior court awarded U.S. Bank its costs under A.R.S. §§ 12-349, -341, -1103(B), 33-420(C), and Rule 68 but declined, "in [its] discretion," to award any attorney fees, holding that "[s]uch fees are not mandatory in this action."

**¶14**     Vaughn-Leavitt appeals the dismissal of the FAC. U.S. Bank cross-appeals the denial of its application for attorney fees. We have jurisdiction. *See* A.R.S. §§ 12-2101(A)(1), -120.21(A)(1).

## DISCUSSION

I.     The Superior Court did not err by dismissing Vaughn-Leavitt's claims as time-barred.

**¶15**     Dismissal under Rule 12(b)(6) is only appropriate if, as a matter of law, the plaintiff "would not be entitled to relief under any interpretation of the facts susceptible of proof." *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8 (2012) (citation omitted). The superior court's determination of when a cause of action accrued is reviewed *de novo* if it "hinges solely on a question of law rather than resolution of disputed facts." *Maricopa County v. Rovey*, 250 Ariz. 419, 425, ¶ 16 (App. 2020) (citation omitted).

**¶16**     Because a plaintiff is not entitled to relief on a time-barred claim, "[t]he affirmative defense of a statute of limitations may be raised in a motion to dismiss if it appears on the face of the complaint that the claim is barred." *France v. Ariz. Cntys. Ins. Pool*, ___ Ariz. ___, ___, ¶ 6, 519 P.3d 1029, 1031 (App. 2022) (citation omitted). In that event, "the burden is on the plaintiff to establish that the statute has been tolled." *Bailey v. Superior Court*, 143 Ariz. 494, 498 (App. 1985). Vaughn-Leavitt does not dispute that its claims arising out of the purportedly wrongful release of the 2003 DOT are governed by A.R.S. § 12-550's four-year limitations period. Vaughn-Leavitt does not deny that it was aware, in 2005, that the Release had been recorded, nor does it contend that the "discovery rule" or equitable tolling principles apply here to toll the accrual of its causes of action. Instead, Vaughn-Leavitt argues that the superior court erred in dismissing the FAC because, taken as true, the allegations in the FAC "establish that [its] causes of action accrued in 2020, not 2005." Vaughn-Leavitt explains that the FAC alleges that, "from the outset," Vaughn-Leavitt "consistently contended" that the Release was ineffective because Anderson was not an authorized signer, and that Downey, U.S. Bank's predecessor-in-interest, "was aware of [Vaughn-Leavitt's] position at the time of closing." Vaughn-Leavitt

contends that, because the FAC alleges that Downey "was aware" that Vaughn-Leavitt "disavowed" the Release "at or near the time it was signed," Vaughn-Leavitt's causes of action did not accrue until U.S. Bank "actually challenged [Vaughn-Leavitt's] long-held position" by instituting proceedings to foreclose on the 2005 DOT in disregard of Vaughn-Leavitt's purported first-position lienholder status. "[A]t the very least," Vaughn-Leavitt insists, the FAC's allegations establish "a question of fact" about whether a dispute existed between Vaughn-Leavitt and U.S. Bank about the validity of the Release until U.S. Bank initiated proceedings to foreclose on the 2005 DOT in disregard of Vaughn-Leavitt's purported first-position lienholder status.

¶17 If a potential priority dispute between current lienholders were the only harm caused by the wrongful recording of a lien release, then we might find merit in Vaughn-Leavitt's contention that its cause of action for the wrongful recording of the Release did not accrue as long as Downey recognized (or, at least, failed to challenge) the continued validity of the 2003 DOT. A potential priority dispute between current lienholders is not, however, the only harm caused by the wrongful recording of a lien release.

¶18 A lien is an interest in property, Restatement (Third) of Property: Mortgages § 1.1 (1997), and so a lienholder whose lien has been wrongfully released has, by definition, been wrongfully deprived of a property interest. Moreover, the purpose of recording a lien is to protect the lienholder's interests not only against those of property owners and other lienholders, but against claims by as-yet-unknown third parties such as judgment creditors, subsequent purchasers, and the like. *Rowe v. Schultz*, 131 Ariz. 536, 539 (App. 1982) (noting "the desirability of encouraging recording and penalizing non-recording of property interests for the protection of all persons involved"); *see also Thomas v. Lynx United Grp., LLC*, 159 P.3d 789, 793-94 (Colo. App. 2006) ("The purposes of the recording statutes are to protect purchasers of real property against the risk of prior secret conveyances by the seller and to permit a purchaser to rely on the condition of title as it appears of record.") (cleaned up). The wrongful recording of an unauthorized lien release deprives the lienholder of the protection the lien had provided. *See In re Haas*, 31 F.3d 1081, 1086 (11th Cir. 1994) (holding that bank's lien was subordinate to tax liens that were filed after bank's lien "had been released by mistake" and before bank's lien was reinstated); *Bank of N.Y. v. Langman*, 986 N.E.2d 749, 753, ¶ 21 (Ill. App. Ct. 2013) ("[S]ubsequent purchasers, without notice or anything to put them on inquiry of an adverse title or lien, may rely on the recorded release" of a lien even if the release was "unauthorized," and "will take priority of title over the original lienholder."). Because "[c]ommencement of the statute of

6

limitations will not be put off until one learns the full extent of his damages," *Com. Union Ins. Co. v. Lewis & Roca*, 183 Ariz. 250, 255 (App. 1995) (cleaned up), accrual of a lienholder's claim for wrongful release of its lien is not delayed until the property is sold and the lienholder left empty-handed. Instead, a lienholder's cause of action for the wrongful release of its lien accrues once the lienholder learns that it has been wrongfully deprived of a security interest through the unauthorized release of its lien. *See Humphrey v. State*, 249 Ariz. 57, 64, ¶ 23 (App. 2020) ("[A] cause of action accrues when the plaintiff knows he or she has been injured and has a reason to connect the injury to a particular cause . . . in such a way that a reasonable person would be on notice to investigate whether the injury might result from fault.") (cleaned up).

**¶19**      The allegations in the FAC, taken as true, establish that Vaughn-Leavitt knew, in May 2005, that an unauthorized release of the 2003 DOT had been recorded. Vaughn-Leavitt was not entitled to simply sit on its hands after learning it no longer had the protection of the 2003 DOT. *Cf. Hudler v. Guerdan*, 113 S.W.2d 1039, 1041 (Mo. Ct. App. 1938) (stating that a lienholder must "act[] with promptness after discovering the existence of the false and fraudulent release" because courts "will not grant aid to a party who has negligently slept on his rights and allowed his demand to become stale"). Instead, the loss of the protection of the 2003 DOT constitutes harm that triggered the accrual of Vaughn-Leavitt's claims, even though the Property itself was not lost to foreclosure until 2020. *See CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*, 198 Ariz. 173, 176, ¶ 11 (App. 2000) ("[A]ccrual requires only actual or constructive knowledge of the *fact* of damage, rather than of the total extent or calculated amount of damage.") (emphasis added).

**¶20**      Because the allegations of the FAC, accepted as true, establish that Vaughn-Leavitt knew that it had suffered the wrongful deprivation of an interest in property when the Release was recorded in May 2005, costing Vaughn-Leavitt the protection of its 2003 DOT, its claims arising out of the wrongful release of the 2003 DOT accrued at that time. Section 12-550 therefore bars the claims Vaughn-Leavitt waited 15 years to assert.

**¶21**      Because we affirm the dismissal of Vaughn-Leavitt's claims as time-barred, we need not address Vaughn-Leavitt's arguments that the superior court erred in finding Vaughn-Leavitt's claims barred on alternative grounds as well.

II.     A finding of grounds for sanctions under A.R.S. § 12-349 mandates an award of reasonable attorney fees.

¶22         On cross-appeal, U.S. Bank argues the superior court erred by denying its request for an award of attorney fees under A.R.S. §§ 12-349, -1103(B), and 33-420(C).

¶23         A.R.S. § 12-349(A) provides in part that a court "shall assess reasonable attorney fees" and "expenses" against a party or attorney who

> (1) [b]rings or defends a claim without substantial justification[,] (2) [b]rings or defends a claim solely or primarily for delay or harassment[,] (3) [u]nreasonably expands or delays the proceeding[,] [or] (4) [e]ngages in abuse of discovery.

We review the superior court's findings of fact in considering a request for fees pursuant to A.R.S. § 12-349 under a "clearly erroneous" standard, but a court's application of the statute is a question of law we review *de novo*. *City of Casa Grande v. Ariz. Water Co.*, 199 Ariz. 547, 555, ¶ 27 (App. 2001).

¶24         Vaughn-Leavitt contends that the superior court could not properly consider U.S. Bank's application for fees and costs on the merits because the application was served by email, an unauthorized method of service. But Vaughn-Leavitt does not identify any prejudice it suffered as a result of U.S. Bank's use of email. Vaughn-Leavitt does not, for example, deny that its counsel received and responded to U.S. Bank's application. Accordingly, we find that the superior court did not err in considering U.S. Bank's application on the merits instead of denying it on grounds of improper service. *See Kline v. Kline*, 221 Ariz. 564, 570, ¶ 21 (App. 2009) (noting that "strict technical compliance with rules governing service may be excused when the court has already acquired jurisdiction over the receiving party and that party receives actual, timely notice").

¶25         U.S. Bank argues that the superior court erred by awarding costs under A.R.S. § 12-349 but then deciding, "in [its] discretion," not to award attorney fees. U.S. Bank argues that the superior court's award of costs pursuant to § 12-349 establishes that the court found statutory grounds for sanctions, and that such a finding required the court to award reasonable attorney fees as well as costs.

¶26         We agree. In awarding costs to U.S. Bank as a sanction under § 12-349, the superior court necessarily, though implicitly, found at least one of the four statutory grounds for sanctions. *See In re CVR 1997*

*Irrevocable Tr.*, 202 Ariz. 174, 177, ¶ 16 (App. 2002) (in the absence of express factual findings, "we presume that the trial court found every fact necessary to sustain its ruling"). Having found grounds for sanctions under § 12-349, the superior court was required to award reasonable fees as well as costs. *Democratic Party of Pima Cnty. v. Ford*, 228 Ariz. 545, 548, ¶ 10 (App. 2012) (once party seeking sanctions makes showing required by § 12-349, "the award of attorney fees becomes mandatory").

**¶27** Vaughn-Leavitt contends that attorney fees cannot be awarded under § 12-349 because the superior court failed to make specific findings to support the award. Although A.R.S. § 12-350 requires a court to set forth "specific reasons" for the imposition of sanctions under § 12-349, the lack of such findings is not grounds for relief on appeal absent an objection in the trial court. *See Trantor v. Fredrikson*, 179 Ariz. 299, 301 (1994) ("[T]he failure of a party to object to the lack of findings of fact and conclusions of law in making awards of attorneys' fees under . . . § 12-349 precludes that party from raising the absence of findings as error on appeal."); *see also Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 296, ¶ 17 (App. 2020) ("When a court fails to comply with a rule that mandates findings, a party who does not raise the issue in an authorized post-judgment motion may waive it on appeal.") (emphasis omitted). Nothing in the record indicates that Vaughn-Leavitt made any objection, by post-judgment motion or otherwise, to the superior court's failure to make specific factual findings to support its award of costs as a sanction under § 12-349. Vaughn-Leavitt has thus waived this argument on appeal.

**¶28** Because the superior court's award of costs under § 12-349 establishes that the court impliedly found that U.S. Bank had established at least one of the statutory grounds for sanctions, § 12-349 required the superior court to award reasonable attorney fees to U.S. Bank as well. *See Ford*, 228 Ariz. at 548, ¶ 10. We therefore reverse the court's denial of U.S. Bank's fee request and remand for a determination of the amount of a reasonable fee award under § 12-349. We find it unnecessary to address U.S. Bank's alternative arguments that it was entitled to an award of attorney fees under A.R.S. §§ 12-1103(B) and 33-420 as well.

**CONCLUSION**

**¶29** We affirm the superior court's dismissal of Vaughn-Leavitt's FAC as time-barred. We reverse the court's decision not to award attorney fees to U.S. Bank under A.R.S. § 12-349 and remand for a determination of the amount of a reasonable fee award. U.S. Bank is granted reasonable

attorney fees and costs on appeal and cross-appeal pursuant to A.R.S. § 12-349, upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA