851 P.2d 122

**Scott NESS, Plaintiff–Appellant,**

v.

**WESTERN SECURITY LIFE INSURANCE COMPANY, an Arizona corporation; Valley National Bank of Arizona, an Arizona corporation, Defendants–Appellees.**

**No. 1 CA–CV 90–399.**

Court of Appeals of Arizona,
Division 1, Department A.

Sept. 17, 1992.

Review Denied May 18, 1993.

---

Patten & Montague, P.C. by W. Dea Montague, Gary Patten, Tempe, for plaintiff-appellant.

Bess & Dysart, P.C. by Leon D. Bess, Brad K. Keogh, Timothy R. Hyland, Phoenix, for defendant-appellee Western Sec. Life Ins. Co.

Gust, Rosenfeld & Henderson by Richard A. Segal, Phoenix, for defendant-appellee Valley Nat. Bank of Arizona.

OPINION

LANKFORD, Judge.

Scott Ness brought this appeal from the entry of summary judgment against him and in favor of defendants Western Security Life Insurance Company ("WSLIC") and Valley National Bank of Arizona ("VNB"). Ness raises four issues on appeal:

1. Did the superior court err in entering summary judgment finding that plaintiff's claim for breach of the duty of good faith and fair dealing was barred by the statute of limitations?

2. Did the superior court err in entering summary judgment against Ness based on the lack of evidence of the elements of fraud?

3. Did the superior court err in entering summary judgment against Ness on his claim of intentional infliction of emotional distress based on the statute of limitations?

4. Did the superior court err in entering summary judgment against Ness based on lack of evidence of the elements of racketeering?

I.

In 1984, Ness and another person borrowed money from VNB. In connection with the transaction, Ness purchased a WSLIC credit life and disability insurance policy through the VNB loan officer. The policy is not a part of the record on appeal.

On January 1, 1985, Ness was seriously injured in an accident which left him unable to work for a period of time. WSLIC paid approximately two months' disability benefits under the policy while Ness was unable to perform any work. Thereafter, WSLIC stopped its payments even though Ness was not working. WSLIC asserted that because he was unemployed on the date of the accident, Ness had no occupation and therefore was qualified for payments under the disability policy only if he were disabled from *any* occupation. Instead, WSLIC contended, Ness had been disabled only from the occupation he held just prior to the accident and was capable of performing some other kind of work. Therefore, WSLIC reasoned, Ness was not entitled to any further payments under the disability policy.

Ness did not file this action until April 14, 1988. He admits that on August 28, 1985, his attorney warned VNB that the claim was being denied unfairly. However, Ness's counsel received a letter dated May 9, 1986, from WSLIC which states, in part, as follows:

We also would be pleased to receive an update of the medical treatment Mr. Ness has received since June 24, 1985. This will help keep his entire claim file current.

We too wish to see a speedy and final determination of your client's claim. *We still feel however that such determination cannot be made* until an evaluation of Mr. Ness's ability or inability to perform work is made.

(Emphasis added.)

Ness's claim was finally and unequivocally denied in writing by another letter from

WSLIC dated August 28, 1987. That letter stated: "After reviewing the report in conjunction with the medical information already contained in our claim file, we have concluded that Mr. Ness does not qualify for additional disability benefits."

The complaint thereafter filed by Ness raised these claims: Count I, insurance bad faith (breach of duty of good faith and fair dealing); Count II, breach of contract; Count III, common law fraud; Count IV, intentional infliction of emotional distress; and Count V, scheme or artifice to defraud and racketeering (false representation). The parties ultimately stipulated to dismiss the breach of contract claim. We will discuss the remaining counts in the same order as presented in the complaint. Because the trial court has ruled that a question of fact exists as to whether VNB and WSLIC are equally liable as joint venturers, we will address all issues as applying to both VNB and WSLIC.

■ On review of summary judgment, we view the facts and evidence in a light most favorable to the party against whom summary judgment was granted and draw all reasonable inferences in favor of that party. *United Bank of Ariz. v. Allyn,* 167 Ariz. 191, 193, 195, 805 P.2d 1012, 1014, 1016 (App.1990). Summary judgment was granted against Ness, and we review the record accordingly.

■ On appeal, both plaintiff and defendants rely on matters outside the record of proceedings in the superior court. We cannot consider any evidence not contained in the record. *GM Dev. Corp. v. Community Am. Mortg. Corp.,* 165 Ariz. 1, 4, 795 P.2d 827, 830 (App.1990).

## II.

We first consider the bad faith claim. The trial court dismissed this claim as to both defendants. It ruled that the statutory two-year period began on August 28, 1985, when Ness's attorney informed VNB that WSLIC was unfairly refusing to pay the claim. Because Ness did not file his complaint until April 14, 1988, the trial court ruled that the two-year limitations

period fixed by A.R.S. § 12–542 had expired.

Ness concedes that the bad faith claim is subject to the two-year limitations period in A.R.S. § 12–542. Because Ness did not file his complaint until April 14, 1988, his action can survive summary judgment only if evidence exists that the cause of action arose on or after April 14, 1986.

■ In Arizona, an insurance company commits bad faith when it (1) intentionally (2) denies, fails to process, or fails to pay a claim (3) without a reasonable basis for such action. *Brown v. Superior Court,* 137 Ariz. 327, 336, 670 P.2d 725, 734 (1983) (casualty policy); *Noble v. National American Life Ins. Co.,* 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981) (health insurance policy); *Borland v. Safeco Ins. Co. of Am.,* 147 Ariz. 195, 199, 709 P.2d 552, 556 (App. 1985) (homeowners' policy). The cause of action arises only when all three elements are present. A limitations period starts when the cause of action arises. *Norton v. Steinfeld,* 36 Ariz. 536, 288 P. 3 (1930). Therefore, Ness's cause of action did not arise, and the limitations period did not begin to run, until WSLIC had intentionally denied, failed to process, or failed to pay his claim without a reasonable basis.

The question presented in this appeal is whether any genuine dispute exists as to when WSLIC denied or failed to pay this claim. We believe such a dispute exists, which renders entry of summary judgment error. Ness's claim may not have arisen until WSLIC provided him with the unequivocal written denial of the claim on August 28, 1987. Prior to that time, WSLIC had treated its failure to pay benefits as non-final. For example, in the letter dated May 9, 1986, addressed to Ness's counsel, WSLIC stated as follows:

Since Mr. Ness was unemployed at the time he was injured, the question of total disability still rests upon a determination of what jobs, if any, your client may be reasonably qualified for by reason of education, training, or experience, given the limitation of his present physical condition. In order to make such a vocational determination, we propose again that

Mr. Ness be seen by Mr. Lane Hall of Crawford Risk Management Services.

We also would be pleased to receive an update of the medical treatment Mr. Ness has received since June 24, 1985. This will help keep his entire claim file current.

We too wish to see a speedy final determination of your client's claim. We still feel however that such determination cannot be made until an evaluation of Mr. Ness's ability or inability to perform work is made.

WSLIC thus held out some hope to Ness that additional benefits might be paid. This evidence creates a genuine dispute of material fact as to when the insurer denied the claim. The cause of action does not accrue until the insurer breaches, and the insurer does not breach until it denies the claim:

> [T]he better reasoned rule is that the cause of action [for insurance bad faith] accrues at the time all settlement negotiations end and not at the time of the original casualty
>
> . . . .
>
> [T]he cause of action should accrue only when the insurer terminates all negotiations with the insured because only at that point can the nature and extent of insurer's breach of the covenant of good faith and fair dealing and of the damages that were proximately caused by this breach be determined.

WILLIAM M. SHERNOFF, *et al.*, INSURANCE BAD FAITH LITIGATION, § 20.07[4][b], at pp. 20–46 (1991).

■ In this case, the record includes evidence that WSLIC did not definitively deny the claim for disability insurance benefits until it sent the letter dated August 28, 1987. The earlier statement by Ness's counsel that WSLIC was unfairly denying the claim could be viewed by a jury as an attempt to induce the insurer to pay, rather than as a recognition that the insurer had finally and irrevocably denied the claim. On this record, we cannot say that no genuine dispute of material fact exists regarding the timeliness of the complaint. We therefore reverse the trial court's summary judgment against Ness on the bad faith claim.

### III.

Ness's complaint also alleged common law fraud. On appeal, he alleges two fraudulent acts by the defendants. First, Ness alleges that VNB misrepresented the disability insurance coverage sold to him, and second, he alleges that after the accident, WSLIC misrepresented to Ness the coverage available under the policy.

The motion for summary judgment asserted Ness had not pleaded his fraud claim with particularity as required pursuant to Rule 9(b), Arizona Rules of Civil Procedure and that "[n]o honest allegation supporting the so-called fraud can be made by Mr. Ness or his lawyers. The sworn testimony of Mr. Ness and his mother, the only persons who discussed the coverage with anyone from VNB, shows that nothing was said about the policy except that it was a disability policy." [1]

■ Ness's first claim, that VNB misrepresented the policy at the time he purchased it, was raised neither in his complaint nor his response to the motions for summary judgment; he may not now raise this claim on appeal. *Campbell v. Warren*, 151 Ariz. 207, 726 P.2d 623 (App.1986).

Ness's second claim, that WSLIC misrepresented the policy coverage, was rejected below for three reasons. First, the trial judge found that Ness had failed to state his claim with particularity as required by Rule 9(b). Second, the judge found that the insurance company's representation of the policy coverage was accurate. Third, the judge held that Ness had no right to rely upon WSLIC's interpretation of the insurance contract language.

---

**1.** We note that some of the arguments made in the motion for summary judgment and part of the basis for the trial court's granting of summary judgment were in the nature of a motion to dismiss, *i.e.*, they related to the sufficiency of the pleading. The court, however, properly treated the matter as a motion for summary judgment because the court considered matters outside the pleadings, such as deposition testimony. *See* Ariz.R.Civ.P. 12(b).

Taking the last ground first, Ness need not separately show an entitlement to rely on the representations if his pleading shows that his reliance was reasonable. *See Parks v. Macro–Dynamics, Inc.*, 121 Ariz. 517, 520, 591 P.2d 1005, 1008 (App. 1979). However, Ness did not show reasonable reliance. Counts II and III of Ness's complaint alleged that:

## II.

Defendants made representations to Plaintiff that the insurance contract would pay disability benefits only during the time that was [sic] totally disabled from any occupation for which he was qualified by reason of education, training, or experience.

## III.

Defendants made such representations knowing the falsity of such representations or consciously disregarding the truth or falsity of the representations with the intent to induce the Plaintiff to forego benefits due him. They knew that the policy provided benefits during the first twelve months after total disability if you are not able to perform the duties of your occupation because of the accidental injury. Plaintiff relied on the representations. Plaintiff's reliance was reasonable. As a result, Plaintiff sustained damages under the terms of said representations.

Ness's allegation of reliance was conclusory. This allegation lacked the particularity required by Ariz.R.Civ.P. 9(b) for alleging fraud. Plaintiff explained neither how he relied on the representations nor why that reliance was reasonable. *See Parks*, 121 Ariz. at 520, 591 P.2d at 1008.

Moreover, the record reveals no evidence of Ness's reliance which countered the defendants' motion for summary judgment. Notwithstanding his allegation of reliance, the record clearly indicates that Ness ultimately did not rely on the representations made by WSLIC. If Ness had truly relied, he would have accepted defendants' statements that he had no disability insurance coverage. Instead, believing that he had a valid claim to those benefits, Ness consulted an attorney who threatened defendants with a lawsuit and ultimately filed this action to recover damages for the unpaid insurance benefits. Because Ness demonstrated no reliance on WSLIC's representations, we affirm the superior court's entry of summary judgment on this ground even though the judgment relied on other grounds. We may uphold a judgment on grounds different from those cited by the trial court. *See Glaze v. Marcus*, 151 Ariz. 538, 540, 729 P.2d 342, 344 (App.1986).

We also agree with the trial court that there was no evidence WSLIC's post-claim representations were untrue. WSLIC took the position that the policy would not pay benefits under certain circumstances.[2] The policy itself was not placed in evidence. As the party bearing the burden of proving the elements of misrepresentation, Ness was obligated to come forward with evidence of falsity when challenged by the summary judgment motion. *See United Bank v. Allyn*, 167 Ariz. at 196, 805 P.2d at 1017.

For these reasons, we affirm the summary judgment against the fraud claim.

## IV.

Count IV of the complaint alleged a claim for intentional infliction of emotional distress. The trial court rejected this claim for two reasons: the statute of limitations barred this claim and Ness lacked facts upon which a reasonable jury could find intentional infliction of emotional distress.

Ness failed to argue in his opening brief that the statute of limitations did not bar his claim for intentional infliction of emotional distress. While he did discuss the issue in his reply brief, an issue raised for the first time in appellant's reply brief comes too late. *United Bank v. Mesa N. O. Nelson Co.*, 121 Ariz. 438, 443, 590

---

**2.** We are unable to establish the validity of WSLIC's position because the insurance policy is not contained in the record. The validity of WSLIC's position, however, would appear to be relevant to finding a reasonable basis for the bad faith claim. *See* § II, infra.

P.2d 1384, 1389 (1979); Ariz.R.Civ.App.P. 13(c). Even when he did raise the issue in his reply brief, Ness failed to cite any supporting authority for the proposition that the statute of limitations for this claim would begin to run at the same time as the insurance bad faith claim. Arguments unsupported by any authority will not be considered on appeal. *Paros v. Hoemako Hosp.*, 140 Ariz. 335, 338, 681 P.2d 918, 921 (App.1984). Because we uphold the judgment on the statute of limitations issue, we need not decide whether the evidence supported submission of this claim to the jury. We affirm the trial court's summary judgment on count IV.

## V.

Ness also asserted a civil racketeering claim in Count V. He alleges that defendants violated the civil racketeering statute as set forth in A.R.S. § 13–2314. This statute allows treble damages if the defendants committed one of the enumerated crimes. Ness alleged that defendants committed the predicate offense of scheme or artifice to defraud. A.R.S. § 13–2310 sets forth those elements as follows:

A. Any person who, pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions is guilty of a class 2 felony.

B. Reliance on the part of any person shall not be a necessary element of the offense described in subsection A.

To sustain this cause of action, Ness must provide *prima facie* evidence that VNB or WSLIC had a scheme to obtain disability insurance premiums by making false statements or material omissions. *See* A.R.S. § 13–2310; *Orme School . v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). As stated in *State v. Haas*, 138 Ariz. 413, 675 P.2d 673, (1983), the elements of this section are as follows:

(1) a scheme or artifice to defraud, ... (2) defendant knowingly and intentionally participated in it and ... (3) it was a scheme for obtaining money or property

by means of 'false or fraudulent pretenses, representations or promises.' 138 Ariz. at 419, 423, 675 P.2d at 679, 683 (quoting *State v. Stewart*, 118 Ariz. 281, 576 P.2d 140 (App.1978)).

█ "[A] 'scheme' is a 'plan,' while an 'artifice' is an 'evil or artful strategy.' Thus, a 'scheme or artifice' is some 'plan, device, or trick' to perpetrate a fraud." *Id.* Ness failed to produce evidence of any scheme or artifice to defraud on the part of either WSLIC or VNB.

█ Ness claims that VNB's sale of a WSLIC insurance policy by a VNB loan officer and a subsequent WSLIC denial of coverage evidence racketeering. As Ness admitted and as set forth in the defendant's statement of facts supporting the motion for summary judgment:

2. When Ness was at the bank getting the loan, the bank officer said that insurance for the loan was not a bad idea. She said the insurance would take care of the loan so "you wouldn't have to worry about it while you were disabled or dead." The subject was discussed for just a few minutes. It was "open and shut." He can remember nothing else that the banker said about the insurance....

3. When Ness picked up the money from the loan he does not think he had any conversation with anybody at the bank about insurance.

In addition, Ness argues that VNB attempted to collect on the loan after his injury through telephone calls, letters, and a report to a credit agency. The foregoing evidence simply does not support Ness's allegation of a plan, device or trick by VNB in selling the insurance at the time it made the loan to Ness.

Likewise, the evidence indicates no plan, device or trick by WSLIC in denying post-injury Ness's claim. WSLIC denied the claim based on its interpretation of the policy. WSLIC's obligation to pay benefits is governed by the terms of the insurance contract. Ness has the coverage provided by the insurance contract. If he is denied that coverage, the law provides remedies. An insurer's erroneous denial of coverage,

standing alone, is not "a scheme or artifice to defraud."

The actions of VNB and WSLIC in concert appear to consist of (1) VNB's inquiries to WSLIC as to the scope of coverage; (2) in response, WSLIC advised VNB it could take whatever action it deemed appropriate to protect its interests in the loan proceeds; and (3) WSLIC requested VNB to keep notes of the telephone conversations it had with Ness and his counsel. In fact, a memo dated September 27, 1985, from WSLIC to VNB read as follows:

> Thank you for your phone call the other day concerning the situation with the normal collection process of this account.
>
> We have been trying our best to resolve the issues of whether any more benefits would be payable with the attorney in this case, but we have not had any success thus far. Our claim file is not closed but is temporarily on hold.
>
> I don't know what to advise you, since it is not our place to do so. I can only say that you will have to do what you feel is in the best interests of the bank at the present time. If our claim is ultimately resolved and if it results in monies payable, then of course we would be sending that. I'm sorry I could not be of further help to you.

None of these actions demonstrate an evil or artful strategy to obtain money by false or fraudulent pretenses. Ness failed to present *prima facie* evidence of a scheme or artifice to defraud to sustain his claim of racketeering against either VNB or WSLIC. *See* A.R.S. § 13–2310; *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). The trial court properly granted summary judgment on count V.

### VI.

We reverse the summary judgment as to count I (insurance bad faith) and affirm summary judgment as to counts III (common law fraud), IV (intentional infliction of emotional distress), and V (racketeering and scheme or artifice to defraud).

GRANT, P.J., and TOCI, J., concur.