IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**GARBIS SATAMIAN,**
*Plaintiff/Appellant,*

*v.*

**GREAT DIVIDE INSURANCE CO., ET AL.,**
*Defendants/Appellees.*

No. CV-23-0085-PR
Filed April 9, 2024

Appeal from the Superior Court in Maricopa County
The Honorable Katherine Cooper, Judge
No. CV2021-010306
**AFFIRMED**

Memorandum Decision of the Court of Appeals, Division One
No. 1 CA-CV 22-0375
Filed February 28, 2023
**VACATED**

COUNSEL:

Brian Blankenship, Charles L. Finlayson (argued), Claggett & Sykes Law Firm, Las Vegas, NV; and Lawrence Moon, Poli, Moon, and Zane, PLLC, Phoenix, Attorneys for Garbis Satamian

Bennett Evan Cooper, Timothy M. Strong, James T. Lawson, Dickinson Wright PLLC, Phoenix, Attorneys for Great Divide Insurance Company

Ryan Sandstrom (argued), Taylor Barlow, Copper Canyon Law LLC, Mesa, Attorneys for Risk Placement Services

Gregory B. Iannelli, Matthew J. Stanford, Bryan Cave Leighton Paisner LLP, Phoenix, Attorneys for Farm Bureau Property and Casualty Insurance Company

JUSTICE LOPEZ authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, JUSTICES BOLICK, BEENE, MONTGOMERY and KING joined.

---

JUSTICE LOPEZ, Opinion of the Court:

**¶1** We consider when the statute of limitations commences for claims of negligent procurement of insurance and promissory estoppel. We hold that these claims accrue when an insured incurs its own litigation costs for defense against a claim due to an insurer's negligent failure to obtain insurance coverage.

## BACKGROUND

**¶2** In March 2015, Sayed Mohammed ("Mohammed")—owner of A.C. Watercraft Rental, LLC ("A.C. Watercraft")—contacted Farm Bureau Property and Casualty Insurance Company ("Farm Bureau") to purchase liability insurance. Mohammed sought liability insurance for *all* business-owned watercraft. Farm Bureau connected Mohammed with Great Divide Insurance Company ("Great Divide") for the issuance of such a policy.

**¶3** On March 26, 2015, Great Divide issued the policy, listed Risk Placement Services ("RPS") as the agent of record, and provided Mohammed with the policy schedule ("Policy Schedule") listing the specific vehicle-identification numbers ("VINs") for the watercraft covered by the policy. Based on his negotiations with Farm Bureau, Mohammed believed the Policy Schedule covered all the watercraft in A.C. Watercraft's inventory. However, notably absent from the Policy Schedule was a Yamaha watercraft—VIN YAMA2958J506—which later was involved in a tragic accident resulting in Stephanie Satamian's death on June 13, 2015.

**¶4** On January 7, 2016, anticipating a lawsuit by the Satamian family, Mohammed filed a claim with Great Divide on behalf of A.C. Watercraft for defense and indemnification. On January 25, 2016, Great Divide denied coverage by letter because, "[t]he jet ski that was involved in

2

the accident . . . is not listed on the [Policy] Schedule." Great Divide's denial letter further provided:

> We reserve the right to review any lawsuits or amendments to this claim to make a separate determination as to whether either a defense, or indemnity, might be provided by Great Divide. It is possible that we might provide a defense and/or indemnity for an amended claim or a lawsuit. Our decision on coverage is based only on the facts as presented to us to date and should not be construed as applicable to a lawsuit or an amendment to this claim. Our right to have notice of either situation is reserved, as are the notice conditions of the policy.

On May 3, 2017, Stephanie Satamian's father—Garbis Satamian ("Satamian")—filed suit against A.C. Watercraft. A.C. Watercraft hired counsel and incurred litigation costs to defend against Satamian's suit.

¶5 Later, A.C. Watercraft re-tendered its claim, and Great Divide once again denied coverage.[1] A.C. Watercraft continued to provide and bear the cost of its own defense in the Satamian lawsuit, serving document requests on Great Divide during the litigation. In February 2020, pursuant to subpoena, Great Divide provided A.C. Watercraft with a portion of its claim file, which apparently confirmed that Farm Bureau and RPS were aware of the subject jet ski but failed to include it in the Policy Schedule of covered watercraft. Ultimately, in December 2020, A.C. Watercraft and Satamian reached a settlement agreement which stipulated to a judgment in Satamian's favor and assigned A.C. Watercraft's insurance coverage claims against Great Divide, RPS, Farm Bureau, and any other pertinent parties to Satamian.

¶6 On June 28, 2021, Satamian exercised this assignment against A.C. Watercraft's insurers and sued Great Divide, Farm Bureau, and RPS (collectively "Defendants") for various claims in both Nevada and Arizona.

---

[1] Although the record is unclear, Satamian alleges that Great Divide denied A.C. Watercraft's re-tendered claim on May 22, 2020; however, the specific timeline is irrelevant because Great Divide's first denial was unequivocal and, even if it was not, it provided sufficient notice to A.C. Watercraft to commence the limitations periods applicable to its claims. *See* Part II, ¶¶ 34–35.

As relevant here, Satamian alleged claims for negligent procurement of insurance, predicated on RPS and Farm Bureau's failure to include the jet ski at issue in the Policy Schedule, and promissory estoppel, based on Defendants' assertions that A.C. Watercraft's entire inventory of jet skis would be covered by the policy.

¶7 RPS moved to dismiss Satamian's claims under Arizona Rule of Civil Procedure 12(b)(6) on statute of limitations grounds. The trial court granted RPS's motion, finding that A.C. Watercraft learned of the negligent procurement of insurance on January 25, 2016, when Great Divide denied coverage, and that it "sustained injury in May 2017, when [A.C. Watercraft] incurred attorneys' fees and costs defending itself." Applying the two-year statute of limitations for the negligent procurement claim (A.R.S. § 12-542) and the three-year limitations period for the promissory estoppel claim (A.R.S. § 12-543), the trial court ruled that both claims were time-barred because each accrued no later than May 2017. Specifically, the negligent procurement of insurance claim was time-barred by May 2019, and the promissory estoppel claim by May 2020.

¶8 Satamian appealed the trial court's dismissal on two grounds: (1) the discovery rule tolled the statute of limitations; and (2) the claims could not have accrued until his underlying action against A.C. Watercraft was final and non-appealable. *Satamian v. Great Divide Ins.*, No. 1 CA-CV 22-0375, 2023 WL 2250419, at *2 ¶¶ 13, 17 (Ariz. App. Feb. 28, 2023) (mem. decision). The court of appeals rejected Satamian's arguments, holding that A.C. Watercraft knew or should have known of its injury by May 2017 when it incurred legal costs and had sufficient notice to investigate whether RPS had caused the injury. *Id.* ¶ 16. The court also analogized Satamian's claims to a bad faith denial-of-coverage claim, reasoning that Satamian's claims began to accrue when Great Divide denied coverage. *Id.* at *3 ¶ 21. The court affirmed, holding that both claims were time-barred. *Id.* ¶ 22.

¶9 Satamian sought review in this Court. We granted review to clarify the proper accrual standard for negligent procurement of insurance and promissory estoppel, and the applicability of the discovery rule—issues of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

**DISCUSSION**

¶10      We review the dismissal of a complaint under Rule 12(b)(6) de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 355 ¶ 7 (2012). In evaluating a motion to dismiss, "courts must assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts." *Id.* at 356 ¶ 9. "[M]ere conclusory statements," however, "are insufficient." *Id.*

¶11      We also review de novo questions of law regarding a statute of limitations, including "when a particular cause of action accrues." *Cook v. Town of Pinetop-Lakeside*, 232 Ariz. 173, 175 ¶ 10 (App. 2013) (quoting *Montano v. Browning*, 202 Ariz. 544, 546 ¶ 4 (App. 2002)). Generally, "a cause of action accrues, and the statute of limitations commences, when one party is able to sue another." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588 (1995). The ability to sue arises when the act underlying the legal action occurs, "even though the plaintiff may be unaware of the facts underlying his or her claim." *Id.* If "it appears on the face of the complaint that an action may be barred by limitations, the burden is on the plaintiff to establish that the statute has been tolled." *Bailey v. Superior Court*, 143 Ariz. 494, 498 (App. 1985).

**I.**

**A.**

¶12      We begin with Satamian's argument that the discovery rule tolled the statute of limitations on the negligent procurement and promissory estoppel claims until February 2020, when A.C. Watercraft obtained Great Divide's claim file and confirmed RPS's failure to include the jet ski at issue on the Policy Schedule. Satamian concedes that the Policy Schedule lists RPS as the "agent," but contends that this mere reference to RPS was insufficient to determine RPS's role in the coverage omission. We are unpersuaded.

¶13      The discovery rule provides that a statute of limitations is tolled until "the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Doe v. Roe*, 191 Ariz. 313, 322 ¶ 29 (1998). A plaintiff, however, "need not know *all* the facts underlying a cause of action to trigger accrual." *Walk v. Ring*, 202 Ariz. 310, 316 ¶ 22 (2002)

5

(quoting *Doe*, 191 Ariz. at 323 ¶ 32). The ability "to identify that a wrong occurred and caused injury" is sufficient. *Doe*, 191 Ariz. at 323 ¶ 32. To be sure, "it is not enough that a plaintiff comprehends a 'what'; there must also be reason to connect the 'what' to a particular 'who' in such a way that a reasonable person would be on notice to investigate whether the injury might result from fault." *Walk*, 202 Ariz. at 316 ¶ 22; *accord Lawhon v. L.B.J. Institutional Supply, Inc.*, 159 Ariz. 179, 183 (App. 1988) ("The cause of action does not accrue until the plaintiff knows or should have known of both the *what* and *who* elements of causation.").

¶14 "[D]eterminations of the time when discovery occurs and a cause of action accrues 'are usually and necessarily questions of fact for the jury.'" *Kopacz v. Banner Health*, 245 Ariz. 97, 100 ¶ 10 (App. 2018) (alteration in original) (quoting *Walk*, 202 Ariz. at 316 ¶ 23). However, in some cases, "an unexpected poor result immediately puts a plaintiff on notice that [fault] might have occurred." *Id.* ¶ 11. In such circumstances, "the court may determine the date of accrual as a matter of law." *Id.* Thus, "[t]he affirmative defense of statute of limitations may be raised by motion in Arizona if it appears from the face of the complaint that the claim is barred." *Dicenso v. Bryant Air Conditioning Co.*, 131 Ariz. 605, 606 (1982).

¶15 Satamian's claim that RPS was not identifiable as a potential "who"—a party responsible for A.C. Watercraft's deficient coverage—until February 2020 ignores the fact that the policy is replete with explicit references to RPS as Great Divide's agent. Given RPS's prominence in the policy, Satamian's assertion that A.C. Watercraft had no reason to view RPS as a potential defendant before discovering a single critical document in Great Divide's file—a photograph taken by RPS of all watercraft to be covered by the policy, including the jet ski negligently omitted—is unavailing. In any event, as Farm Bureau aptly notes, it is irrelevant when A.C. Watercraft and Satamian learned *all* the facts underlying each claim; rather, the critical inquiry is when a reasonable person would readily identify RPS as a potential defendant. *See Doe*, 191 Ariz. at 323 ¶ 32. Indeed, the very first page of the Policy Schedule resolves this question: RPS is specifically listed as Great Divide's agent, placing a reasonable person on notice that RPS was a potential "who" responsible for any negligence or promissory estoppel in A.C. Watercraft's deficient coverage. Consequently, by March 2015, when A.C. Watercraft obtained its insurance policy, the "who" prong of the discovery rule was indisputably satisfied.

**¶16** Identifying when A.C. Watercraft knew or should have known the "what"—the wrong and the resulting injury—requires an understanding of the relevant claims' elements. *Glaze v. Larsen*, 207 Ariz. 26, 29 ¶ 10 (2004). Thus, before we can resolve whether A.C. Watercraft's claims were tolled under the discovery rule, we must first determine the accrual standards for negligent procurement of insurance and promissory estoppel claims. We address each claim in turn.

**B.**

**¶17** "An insurance agent owes a duty to the insured to exercise reasonable care, skill and diligence in carrying out the agent's duties in procuring insurance." *Darner Motor Sales, Inc. v. Universal Underwriters Ins.*, 140 Ariz. 383, 397 (1984) (quoting *Quality Furniture, Inc. v. Hay*, 595 P.2d 1066, 1068 (Haw. 1979)). Negligent procurement of insurance arises when an insurance agent negligently fails to obtain the insured's requested coverage. To establish this claim, the plaintiff must prove: (1) duty; (2) breach; (3) causation; and (4) damages. *See Cal-Am Props. Inc. v. Edais Eng'g Inc.*, 253 Ariz. 78, 81 ¶ 5 (2022). The two-year statute of limitations period "does not commence until actionable negligence exists." *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A.*, 198 Ariz. 173, 176 ¶ 7 (App. 2000) (quoting *Com. Union Ins. v. Lewis & Roca*, 183 Ariz. 250, 254 (App. 1995)); *see also* § 12-542. For accrual, negligence alone is insufficient—there must be actual damages. *DeBoer v. Brown*, 138 Ariz. 168, 170–71 (1983); *Amfac Distrib. Corp. v. Miller*, 138 Ariz. 152, 153 (1983); *Myers v. Wood*, 174 Ariz. 434, 435 (App. 1992).

**¶18** The requisite legal injury to sustain a negligence action entails "appreciable, non-speculative harm." *Com. Union Ins.*, 183 Ariz. at 254. "Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred. The threat of future harm, not yet realized, is not enough." William L. Prosser, *Handbook of the Law of Torts* § 30 (4th ed. 1971). Thus, a cause of action for a negligent act does not accrue unless it results in immediate harm. *Tullar v. Walter L. Henderson, P.C.*, 168 Ariz. 577, 579 (App. 1991); *Int'l Mobiles Corp. v. Corroon & Black*, 560 N.E.2d 122, 124–25 (Mass. App. Ct. 1990) (holding that until a plaintiff suffers damages, any negligent procurement claim is merely negligence in the abstract).

**¶19**        The simple anatomy of a negligent procurement claim illustrates the application of these accrual principles.  In a typical negligent procurement scenario, an insured anticipates full coverage, including defense and indemnification of a claim within the scope of coverage.  But because the policy coverage is deficient—allegedly due to the insurer's fault—uncovered claims against the insured result in undefended liability, causing actual harm by requiring the insured to incur costs to defend against the uncovered claim.  *Cf. Gibbons v. Badger Mut. Ins.*, 11 Ariz. App. 485, 489–90 (1970) (holding that a negligent procurement claim accrues for an insurance agency's failure to transfer coverage "when the insurance company officially notified plaintiff that it would acknowledge no coverage for the fire loss").  At this point, the cause of action accrues and the statute of limitations period commences.

### C.

**¶20**        A promissory estoppel claim allows a plaintiff to recover for detrimental reliance on a promise.  *Higginbottom v. State*, 203 Ariz. 139, 144 ¶ 18 (App. 2002).  This claim requires "a promise, which the promissor should reasonably foresee would cause the promisee to rely, upon which the promisee actually relies to his detriment."  *Contempo Constr. Co. v. Mountain States Tel. & Tel. Co.*, 153 Ariz. 279, 282 (App. 1987).  Thus, "[p]romissory estoppel provides an equitable remedy that renders a promise enforceable."  *Sholes v. Fernando*, 228 Ariz. 455, 460 ¶ 14 (App. 2011).  Promissory estoppel claims have a three-year statute of limitations. § 12-543.[2]

**¶21**        Ascertaining the accrual date for a promissory estoppel claim involves a fact-dependent inquiry.  For a promissory estoppel claim predicated on a promise by an insurance company to procure insurance, the promise and the foreseeability of reliance are reasonably identifiable. *See* Restatement (Second) of Contracts § 90 cmt. e (Am. L. Inst. 1981) (noting that the common difficulties in establishing the promise and foreseeable reliance prongs of a promissory estoppel claim are abated in the context of commercial insurance procurement).  An insured relies on an insurance

---

[2] Whether § 12-543 applies to a promissory estoppel claim is not before us. The parties did not dispute the application of § 12-543, or whether a three-year limitations period applies, to Satamian's promissory estoppel claim in the trial court, the court of appeals, or in this Court.

policy at the time of purchase, and that reliance continues throughout the life of the policy, but the critical point for accrual is when the insured detrimentally relied on the insurer's promise to obtain coverage. *Cf. Double AA Builders, Ltd. v. Grand State Constr. L.L.C.*, 210 Ariz. 503, 507 ¶ 19 (App. 2005). Thus, the detriment is not merely when the deficient policy issues, but rather, when a claim is made against the policy, coverage is denied due to the policy's deficiency, and the insured is forced to fund its own defense against the uncovered claim.

**D.**

**¶22**       Satamian argues that, under the accrual standards for both negligent procurement and promissory estoppel, these claims are tolled under the discovery rule because A.C. Watercraft was unable to determine the "what" of the injuries until May 22, 2020, when Great Divide issued a supplemental coverage disclaimer and, again, denied coverage. Defendants contend that A.C. Watercraft should have identified its injury in May 2017, at the latest, when it was required to fund its own defense against the Satamian lawsuit. We agree with Defendants' analysis because a plaintiff need not know *all* facts underlying the claims at issue, merely the presence of a wrong and resulting injury. *See Walk*, 202 Ariz. at 316 ¶ 22; *Doe*, 191 Ariz. at 323 ¶ 32. Here, Great Divide's January 25, 2016 denial of coverage, which prompted A.C. Watercraft to procure its own defense in May 2017, placed A.C. Watercraft on notice of the wrong and its resulting injury.

**¶23**       Satamian next contends that A.C. Watercraft could not have suffered actual damages for negligent procurement until May 22, 2020, when Great Divide rejected A.C. Watercraft's re-tendered claim, thus terminating all coverage negotiations. But, as Farm Bureau notes, Satamian ignores the attorney fees and costs A.C. Watercraft incurred from 2017 to 2020 defending against Satamian's lawsuit. Moreover, even if A.C. Watercraft's re-tender had been successful and Great Divide assumed A.C. Watercraft's defense in the midst of the litigation, Great Divide's delayed coverage would have merely mitigated A.C. Watercraft's damages rather than eliminating them. Great Divide's second denial of coverage simply confirmed that A.C. Watercraft would *continue* to incur damages; it did not *commence* accrual of the claim. *See Com. Union Ins.*, 183 Ariz. at 255 (noting that a statute of limitations commences even if a plaintiff has not discovered "the full extent of his damages" (quoting *Wettanen v. Cowper*, 749 P.2d 362,

9

365 (Alaska 1988))). Indeed, a cause of action may arise even before a plaintiff "sustains all, or even the greater part, of the damages" resulting from the negligence. *Id.* (quoting *Ariz. Mgmt. Corp. v. Kallof*, 142 Ariz. 64, 68 (App. 1984)). Finally, if we accepted Satamian's re-tender argument, it would effectively toll the statute of limitations even when, as here, the subsequent tender is based on the same facts. Therefore, as to the negligent procurement claim, A.C. Watercraft suffered actual, non-speculative damages in May 2017 when it began funding its own litigation defense.

¶24 We find no evidence in the record to support the notion that A.C. Watercraft was reasonably unaware of Defendants' purported negligence when, in May 2017, it was required to fund its own defense in the Satamian suit. Thus, by May 2017, A.C. Watercraft knew or should have known both the "who" and the "what" of the negligent procurement cause of action, establishing the moment A.C. Watercraft was able to sue Great Divide for the deficient policy. *See Sato v. Van Denburgh*, 123 Ariz. 225, 227 (1979) (explaining that "the cause of action accrues when the plaintiff knows, or in the exercise of reasonable diligence should have known, of the defendant's negligent conduct, or when the plaintiff is first able to sue" (internal citations omitted)). Thus, under the two-year statute of limitations for negligence, A.C. Watercraft's cause of action for negligent procurement accrued, as a matter of law, by May 2017, and expired by May 2019. *See* § 12-542. Because Satamian filed this lawsuit in June 2021, this claim is time-barred.

¶25 Satamian further contends that, as to the promissory estoppel claim, A.C. Watercraft did not rely on the deficient policy to its detriment until February 2020, when A.C. Watercraft reviewed Great Divide's files and discovered that Defendants knew of the jet ski at issue, but inexplicably failed to include it on the Policy Schedule. In other words, before A.C. Watercraft's 2020 review of the file, it did not know that Great Divide's assurances of full insurance coverage were inaccurate. However, as Farm Bureau counters, Great Divide's omission of the jet ski was readily discoverable when the policy issued in March 2015 because the face of the Policy Schedule listed the covered watercraft, including the watercrafts' VINs.

¶26 Even if we were to disregard A.C. Watercraft's constructive notice of Great Divide's omission of the jet ski when the policy issued in early 2015, it would not salvage Satamian's claims. In its January 25, 2016

denial of coverage, Great Divide expressly informed A.C. Watercraft that the jet ski at issue was not included in the Policy Schedule. Consequently, when A.C. Watercraft was required to fund its own defense in the Satamian litigation in May 2017, A.C. Watercraft's detrimental reliance on Great Divide's promise of insurance coverage was obvious. Thus, by May 2017, the "what" of the harm was identified, allowing A.C. Watercraft to sue Great Divide on a promissory estoppel claim. Under the three-year statute of limitations for promissory estoppel, A.C. Watercraft's claim began to accrue, as a matter of law, by May 2017, and expired by May 2020. Because Satamian filed this lawsuit in June 2021, this claim, too, is time-barred.

## II.

¶27 Satamian argues that, if the discovery rule does not toll the statute of limitations for his negligence and promissory estoppel claims, we should apply one of two rules from bad faith jurisprudence: (1) the "final judgment accrual rule," applicable to third-party bad faith claims and adopted by this Court in *Taylor v. State Farm Mutual Automobile Insurance Company*, 185 Ariz. 174, 178 (1996), wherein neither claim accrued until his underlying claims against A.C. Watercraft became final and non-appealable; or (2) a first-party bad faith denial of claim rule set forth in *Ness v. Western Security Life Insurance*, 174 Ariz. 497, 500 (App. 1992), wherein neither claim accrued until Great Divide issued a final denial of coverage.

¶28 Insurance bad faith denial-of-coverage claims arise when an insurer intentionally denies, fails to process, or fails to pay a claim without a reasonable basis for such action. *Ness*, 174 Ariz. at 500. Third-party bad faith involves an "action alleging that the insurer acted in bad faith in its duty to indemnify or protect the insured from third-party claims." *Taylor*, 185 Ariz. at 175–76. "In contrast, first-party [bad faith] actions arise out of a direct obligation by which the carrier contracts to pay benefits directly to the insured . . . for losses incurred." *Id.* at 176.

¶29 We first address Satamian's argument that we should apply the final judgment accrual rule. Satamian contends that because "bad faith claims do not begin to accrue until the underlying judgment against the insured becomes final or non-appealable and the insured's rights are assigned over to the injured party," his claims against Great Divide, RPS, and Farm Bureau did not accrue until he settled his underlying lawsuit

against A.C. Watercraft. Satamian fails, however, to account for the difference between the elements of a third-party bad faith claim and those of an action for negligent procurement and promissory estoppel. We decline Satamian's invitation to apply the final judgment accrual rule here because the rule arises from third-party bad faith jurisprudence, which is wholly irrelevant to accrual of the claims in this case.[3]

**¶30** The final judgment accrual rule provides that a final judgment is an essential element for accrual of a third-party bad faith denial-of-coverage claim because "it is impossible to determine if the insurer acted in bad faith, or the extent of the insured's damages, until the underlying liability is finally determined." *Taylor*, 185 Ariz. at 178. Our courts have limited the rule's application to cases in which the alleged injury was exclusively an adverse litigation outcome. *See, e.g.*, *Amfac Distrib. Corp.*, 138 Ariz. at 154 (applying final judgment accrual rule in context of attorney malpractice in litigation); *Manterola v. Farmers Ins. Exch.*, 200 Ariz. 572, 580 ¶ 24 (App. 2001) (applying final judgment accrual rule to bad faith denial of coverage leading to *Morris* agreement). Thus, because third-party bad faith denial claims arise from adverse litigation and hinge on a final determination of liability, they involve considerations wholly divorced from, and temporally well past the accrual point for, Satamian's negligent procurement and promissory estoppel claims. *See* Part I(B) ¶¶ 17–19; Part I(C) ¶¶ 20–21.

**¶31** Similarly, first-party bad faith claims do not begin to accrue until an insurer intentionally and unreasonably issues a final denial of coverage because, as an essential element, a final denial is necessary to establish the existence of bad faith. *See Ness*, 174 Ariz. at 500 ("The cause of action [for bad faith] arises only when all three elements are present."). Simply put, because the limitations period for bad faith does not start until all of the elements are satisfied, the cause of action does not accrue without a final denial of coverage. *Id.*

**¶32** The claims in this case, however, accrue upon discoverable breach and damages arising from the negligent failure, or detrimental reliance on a promise, to provide insurance coverage. *See Sato*, 123 Ariz. at 227. In other words, a third-party bad faith claim requires judgment

---

[3] We note that Satamian alleged bad faith against Great Divide in Nevada, but not in Arizona.

finality, and a first-party bad faith claim necessitates a final denial of coverage, but negligent procurement and promissory estoppel claims require neither. *France v. Ariz. Cntys. Ins. Pool*, 254 Ariz. 151, 155–56 ¶¶ 19–20 (App. 2022) (clarifying that *Taylor* "expressly limited application of the [final judgmental accrual] rule to 'third-party bad faith refusal to settle claim[s]'" and a first-party "bad faith claim accrues when the insurer denies coverage" (citation omitted) (second bracket in original)).

¶33        This case illustrates why the bad faith final judgment and final denial accrual rules offer poor analytical tools for determining accrual for negligent procurement and promissory estoppel claims. Satamian's argument that the claims at issue could not accrue until A.C. Watercraft and Satamian settled the underlying litigation in 2020 is logically flawed. Before A.C. Watercraft could independently settle Satamian's suit, it had to know that Great Divide had denied coverage and forced it to furnish its own defense—such events satisfying the "what" and "who" inquiries commencing accrual for negligent procurement and promissory estoppel. In this circumstance, judgment finality is inapplicable because it is not an element of the negligent procurement and promissory estoppel claims and it is irrelevant in ascertaining when A.C. Watercraft suffered "appreciable, non-speculative harm." *Com. Union Ins.*, 183 Ariz. at 254.

¶34        Satamian's invocation of the final coverage denial rule fares no better. Here, a final denial does not inform the accrual inquiry because, even if Great Divide had reversed its initial denial of coverage—arguably rendering its denial "non-final"—A.C. Watercraft had already suffered actual damages when it incurred litigation expenses between 2017 and 2020. *See id.* at 255 ("[T]he cause of action arises . . . before the [plaintiff] sustains all, or even the greater part, of the damages occasioned by [the] negligence." (ellipses in original) (quoting *Ariz. Mgmt. Corp.*, 142 Ariz. at 68)); *see also* Part I(C) ¶¶ 23–24. Thus, a final coverage denial is unnecessary to determine when A.C. Watercraft knew or should have known the "what" and "who" of its negligent procurement and promissory estoppel claims because Great Divide's January 25, 2016 denial—preliminary or final—caused A.C. Watercraft to incur litigation expenses in May 2017.

¶35        In addition to holding that Satamian's negligent procurement and promissory estoppel claims accrued, as a matter of law, without a final judgment or the necessity of a final coverage denial, we reject Satamian's

assertion that Great Divide's initial denial of coverage was not a final denial of the claim or otherwise failed to place A.C. Watercraft on notice of the "what" causation element of the claims. Great Divide's January 25, 2016 letter is unequivocal and, thus, a final coverage denial "based only on the facts as presented to [Great Divide] to date." Great Divide clearly and unequivocally denied coverage for a specific reason because, "[t]he jet ski that was involved in the accident . . . is not listed on the [Policy] Schedule." Although in denying A.C. Watercraft's claim, Great Divide reserved the right to revisit its denial based on review of "any lawsuits or amendments to [the] claim," A.C. Watercraft never presented additional facts in lawsuits or amendments to the claim sufficient to cause Great Divide to revisit or reverse its initial denial. Moreover, unlike the insurer in *Ness*, Great Divide never "treated its failure to pay benefits as non-final." *See* 174 Ariz. at 500. Thus, Great Divide's initial denial was final and, more importantly, it placed A.C. Watercraft on notice of a wrong that culminated in appreciable, non-speculative harm. A.C. Watercraft's re-tendered claim does not alter our conclusion.

¶36 Satamian settled with A.C. Watercraft, in part, for time-barred claims against Defendants for negligent procurement and promissory estoppel for denial of A.C. Watercraft's insurance coverage claim. Assuming "the truth of all well-pleaded factual allegations and indulg[ing] all reasonable inferences from those facts" in Satamian's complaint, *Coleman*, 230 Ariz. at 356 ¶ 9, we conclude that Satamian has not met his burden to establish that the relevant limitations periods have been tolled. *Bailey*, 143 Ariz. at 498. As the assignee of these claims, Satamian stands in A.C. Watercraft's shoes because an assignee "can stand in no better position than the assignor." *See Stephens v. Textron, Inc.*, 127 Ariz. 227, 230 (1980). Consequently, because A.C. Watercraft's claims are time-barred, Satamian's identical claims are also barred because assignment does not alter the operation of the statute of limitations. *See id.* Although unfortunate, the perceived equities do not, and cannot, justify non-adherence to the proper accrual standards for negligent procurement of insurance and promissory estoppel.

## III.

¶37 RPS requests attorney fees under A.R.S. § 12-349(A), which allows this Court to award fees, in part, if a party "[u]nreasonably expands or delays the proceeding" or "[b]rings or defends a claim without

substantial justification." RPS alleges that Satamian unreasonably expanded proceedings as both claims were time-barred, and "mischaracterizes the nature of the suit as one involving a third-party bad faith failure to settle and cites cases out of context." We decline to award attorney fees for two reasons: first, Satamian's petition did not unreasonably expand the proceedings because, in this unique context involving negligent procurement claims, Arizona's accrual jurisprudence has not been a paragon of clarity; and second, relatedly, RPS and the lower courts erroneously adopted inapposite bad faith jurisprudence to resolve the accrual issues in this case.

## CONCLUSION

¶38　　　For the reasons set forth, we vacate the court of appeals' memorandum decision, but concur in the result, and affirm the trial court's dismissal of the complaint.